## Case No. 16,331.

### UNITED STATES v. SMITH.

[5 Cranch, C. C. 484.] [1]

Circuit Court, District of Columbia. Nov. Term, 1838.

#### SPECIAL BAIL—EVIDENCE.

A certificate, in the usual form, by the officers of the treasury of the United States, that a certain balance is due by the defendant to the United States, is not sufficient cause for bail.

The United States had filed an account from the treasury, certified in the manner required by the statute, stating merely a balance of $11,000 due by the defendant [W. S. Smith].

W. L. Brent, for defendant, moved for leave to appear without special bail; and stated that this court had decided that a mere statement from the treasury, of a balance due, was not even prima facie evidence on the trial, and, therefore, is not sufficient to hold the defendant to bail.

THE COURT (CRANCH, Chief Judge, not sitting in the case) permitted the defendant to appear without special bail.

---

## Case No. 16,332.

### UNITED STATES v. SMITH.

[Brun. Col. Cas. 82; 4 Day, 121; N. C. Cas. 81.]

Circuit Court, D. Connecticut. 1809.

#### SLAVE TRADE — ACTION TO RECOVER PENALTY — ACCOMPLICE AS WITNESS—DEPOSITIONS —REDUCTION TO WRITING.

1. In an action of debt to recover the penalty given by the act of congress of May 10, 1800, for transporting slaves from one foreign port or place to another, a particeps criminis, after the expiration of two years from the commission of the offense, without any prosecution against him being commenced, may be compelled to testify against the defendant, though such witness has been out of the jurisdiction of the United States a considerable part of the two years. A fleeing from justice within the proviso to the United States statute of limitations for crimes does not necessarily import a fleeing from prosecution begun.

[Cited in brief in U. S. v. White, Case No. 16,677.]

2. The offense within the act of congress of May 10, 1800, consists in transporting persons from one foreign country to another, with a view to their being sold as slaves; and the offense is complete when the vessel arrives at the place of destination, whether the slaves are sold or not.

3. Where the certificate of a magistrate taking a deposition, stated it to have been written in his presence, without saying by whom, and it appeared also that the substance of it had been reduced to writing by the deponent ten days before at a different place when the magistrate was not present, it was held that such deposition was inadmissible in the United States courts.

[Cited in West v. Davis, Case No. 17,422.]

This was an action of debt to recover double the value of the interest which the defendant [John Smith] had in certain slaves, transported in the brig Heroine, whereof the defendant was sole owner and master, from Africa to Havanna, and there sold by the direction of the defendant, and for his benefit, contrary to the provisions of the act of congress of May 10, 1800 (5 Stat. 167, 170). The first section of that act is as follows: "That it shall be unlawful for any citizen of the United States, or other person residing within the United States, directly or indirectly, to hold or have any right or property in any vessel employed or made use of in the transportation or carrying of slaves from one foreign country or place to another, and any right or property belonging, as aforesaid, shall be forfeited, and may be libelled and condemned for the use of the person who shall sue for the same; and such person transgressing the prohibition aforesaid shall also forfeit and pay a sum of money equal to double the value of the right or property in such vessel, which he held as aforesaid; and shall also forfeit a sum of money equal to double the value of the interest which he may have had in the slaves, which at any time have been transported or carried in such vessel, after the passing of this act, and against the form thereof."

The action was commenced March 31, 1808. The transportation and sale of the slaves were thus alleged in the declaration: "That while said vessel remained on said coast of Africa, to wit, after the first day of December, 1805, and before the first day of April then next following, by direction of said John Smith, and for his use, the crew of said vessel did forcibly seize, carry on board said vessel, and there confine more than one hundred of the natives of Africa, a foreign country, with intent them to transport, and sell and dispose of as slaves in some foreign country. And afterwards said vessel, pursuant to the previous advice and direction of said John Smith, did sail from said coast of Africa, having on board more than one hundred of the said inhabitants and natives of

[1] [Reported by Hon. William Cranch, Chief Judge.]

Africa, destined to the port of Havanna, a foreign port and place in the dominions of the king of Spain, at which port said vessel arrived before the 1st day of June, 1806. And the said United States further declare that after the 1st day of April, and before the 30th day of June in the year last mentioned, and within two years next before the date of this writ, by the previous advice and direction of said John Smith, and for his use and benefit, at Havanna aforesaid, one hundred of said inhabitants and natives of Africa, so as aforesaid, by said John Smith, caused to be taken and transported to the place last mentioned, were there sold and disposed of as slaves, and at a price not less than one hundred dollars for each of said Africans, amounting in the whole to ten thousand dollars, against the form, force, and effect of the several acts of the congress of the United States in such cases made, and then in force." The declaration then concluded thus: "By means whereof, and by force of the statutes aforesaid, the said John Smith hath forfeited and become liable to pay a sum of money equal to double the value of the interest which he then had in said slaves so transported in said brig Heroine, whereof said John Smith was sole owner, from Africa to Havanna aforesaid, and there sold as aforesaid, for the benefit of said John Smith, amounting to twenty thousand dollars." The defendant pleaded "Not guilty."

Mr. Huntington, Dist. Atty., and Mr. Peters, for the United States.

Goodrich, Daggett, Mosely & Dwight, for defendant.

On the trial the district attorney, Mr. Huntington, for the United States, offered William Mills, one of the crew of the brig Heroine, as a witness to prove that the defendant was owner of the slaves mentioned in the declaration.

Mr. Daggett, for defendant, objected to his being sworn, on the ground that his testimony would implicate himself, and subject him to fine and imprisonment. The second section of the act of May 10, 1800, declares "that it shall be unlawful for any citizen of the United States, or other person residing therein, to serve on board any vessel employed or made use of in the transportation or carrying of slaves from one foreign country or place to another"; and provides that "any such citizen or other person voluntarily serving as aforesaid, shall be liable to be indicted therefor, and on conviction thereof shall be liable to a fine not exceeding two thousand dollars, and be imprisoned not exceeding two years." 1 Stat. 168. A prosecution has already been commenced against the witness for serving on board the defendant's vessel during the voyage in question. Any facts within the knowledge of this witness which will subject the defendant will also show that the witness is guilty.

The district attorney replied that he had entered a nolle prosequi on the prosecution against the witness, and the time for instituting a new prosecution has elapsed, the offense having been committed more than two years ago. Further, the only point to which we propose to direct the testimony of the witness is, that John Smith was owner of certain slaves. To establish that point will not implicate the witness. Nothing is more common in criminal trials than to call upon a particeps criminis to testify.

EDWARDS, District Judge. That is where the witness does not object. But here the witness does object.

The district attorney observed further that the witness came here voluntarily, and agreed to testify. He ought not now to surprise us by refusing to testify. It would be hard on the part of the United States if he were permitted to conduct in this manner.

EDWARDS, District Judge. That is of no consequence. The only question is whether he can be compelled to testify to what may implicate himself, because two years have elapsed since the transaction.

The district attorney then insisted that the lapse of two years after the offense was committed without any prosecution is unquestionably a complete bar, and cited Adams v. Wood, 2 Cranch [6 U. S.] 336. The witness is now as secure from the penalties of the statute as though he had never committed the offense.

Mr. Daggett, for defendant. The United States statute of limitations has a proviso expressly excepting persons fleeing from justice from its operation. The latter clause of the thirty-second section of the act of congress of April 30, 1790 (1 Stat. 119), is as follows: "Nor shall any person be prosecuted, tried, or punished for any offense not capital, nor for any fine or forfeiture under any penal statute, unless the indictment or information for the same shall be found or instituted within two years from the time of committing the offense, or incurring the fine or forfeiture aforesaid." Then follows this proviso: "Provided that nothing herein contained shall extend to any person or persons fleeing from justice." It appears that this witness has been out of the United States a considerable part of the time since the transaction took place. (This had been previously stated, and admitted by the counsel for the United States.) Now, a fleeing from justice is nothing more than avoidance, a going out of the jurisdiction to avoid prosecution. So the construction has been as to fugitives from justice from one state into another. But at any rate the witness will be jeopardized by testifying, and this is sufficient to excuse him. If prosecuted for this offense he must plead the statute of limitations. The attorney for the United States may then reply over a fleeing from justice. This he will attempt to support by showing that the witness has actually been without the jurisdic-

tion of the United States. Will not this jeopardize him? The statute of limitations never purges the offense. Nothing but a pardon will afford the offender complete security. The case of Bollman, in Burr's Trial [Case No. 14,693], was referred to. The question there was whether Bollman was bound to accept the pardon. But without the pardon it was admitted that he could not be called upon to testify.

Mr. Peters, for the United States, contended that a fleeing from justice within the proviso of the statute must be a fleeing from a prosecution begun.

EDWARDS, District Judge. That point was decided otherwise by Ch. J. Ellsworth in the Case of Williams [Case No. 17,708]. He said it made no difference whether a prosecution was commenced or not.

Mr. Goodrich stated that in Williams' Case [supra] the offender had simply been in a foreign country, and it was considered as a fleeing from justice.

EDWARDS, District Judge. I am prepared to give my opinion on the point, but if the jury should find a verdict against the defendant I will give him an opportunity to move for a new trial, and have the opinion of Judge LIVINGSTON. It appears to me that the witness is prima facie protected from prosecution by the statute of limitations. The answer comes from him. He says he is not protected because he has fled from justice. But he ought not to make his fleeing from justice (his own crime) a ground for withholding his testimony. At the same time the court will take care that the witness be not entrapped. The attorney will not be allowed to say now that the prosecution is barred, and thus obtain his testimony, and afterwards bring forward a prosecution, and say that it is not barred, because the witness has fled from justice. The witness must testify.

In the course of the trial the district attorney offered the deposition of Thaddeus R. Austin. It appeared that the substance of this deposition had been copied by the deponent from another paper which he had written at Suffield about ten days before. The certificate of the magistrate who took the deposition was as follows: "Personally appeared the above-named Thaddeus R. Austin of Suffield, in the state of Connecticut, and being duly cautioned, made oath to the truth of the above deposition by him subscribed, and written in my presence." etc.

Mr. Daggett objected to the admission of this deposition on the ground that it was not taken as the act of congress requires. The 30th section of the judiciary act (volume 1, p. 69) provides, that every person deposing shall be carefully examined, and cautioned, and sworn, or affirmed to testify the whole truth, and shall subscribe the testimony by him or her given, after the same shall be reduced to writing, which shall be done only by the magistrate taking the deposition, or by the deponent in his presence. This testimony was not reduced to writing by the magistrate taking the deposition, nor by the deponent in his presence.

Mr. Peters, contra.

EDWARDS, District Judge. The provisions of the act of congress relative to the taking of depositions are very important, and ought to be adhered to strictly. This deposition cannot be read. The question is not a new one. In England the lord chancellor has refused to admit depositions taken as this was. The transportation of the slaves from Africa to Havanna, as stated in the declaration, was clearly proved by the evidence adduced on the part of the United States. It appeared that the vessel arrived at Havanna more than two years before the commencement of the suit; but it did not appear that the slaves were actually sold until some time within the two years.

Messrs. Goodrich and Daggett contended that the offense charged in this declaration is complete when the vessel arrives; and her arrival takes place when she is moored. It is not necessary that the slaves should be landed or sold.

The district attorney and Mr. Peters, contra, insisted that in order to constitute the offense in question the persons transported must be sold as slaves; if they are transported for the purpose of colonization, or any other purpose than to be sold as slaves, it is no offense. But at any rate, they must be landed before the offense is complete. It does not appear that these slaves were landed more than two years before the commencement of the suit. If the defendant relies upon the statute of limitations for his protection it belongs to him to show this, which he has not done.

Mr. Goodrich, in reply, observed that it clearly belonged to the United States to prove the offense committed within two years from the commencement of the suit; otherwise there could be no recovery. There is a manifest distinction between this case and that where a debt is admitted by the defendant, and claimed to be barred by the statute of limitations.

EDWARDS, District Judge. That part of the case which rests upon the statute of limitations is extremely clear. My opinion is, and so I shall charge the jury, that the offense consists in transporting persons from one foreign country to another, with a view to their being sold as slaves; and as soon as the vessel arrives at the place of destination the offense is completed, whether the slaves are sold or not. It is incumbent on the attorney for the United States to show an offense committed within two years; and as this has not been done, there must be a verdict for the defendant.

The jury found accordingly.