## The Western Union Telegraph Company v. Ira F. Collins *et al.*

1. Deposition — *Statute — Defective Certificate — Error.* Our statute requires the certificate of an officer before whom a deposition has been taken to show that the deponent was first sworn "to testify the truth, the whole truth, and nothing but the truth." A certificate by such officer which shows that the deponents were sworn "to testify the whole truth of their knowledge touching the matter in controversy," is defective, and it is error to overrule a motion to suppress such deposition, alleging such defect as ground therefor.

2. Telegram — *Copy of Message — Evidence.* It is not error to permit the introduction in evidence of a copy of a telegraphic message properly identified as a correct copy of the original, fourteen months after its receipt for transmission by the company, where it is first shown by the manager of the company at the receiving office that the original message is not in his office, nor under his control, and that, by the rules of the company, original messages are retained in the office of the company where received for a period of six months, and are then sent to Chicago and destroyed.

3. Message — *Non-Delivery — Measure of Damages.* A telegraph company that neglects to deliver a message to a live-stock shipper as to the state of the market at a certain point, in consequence of which neglect the shipper sends his stock to the next nearest market, at which he receives ten cents per hundred less than the market price for the same stock ranged at the first point on the same day, is entitled to recover from the telegraph company the difference between the market prices of the two points, with the difference in freight added.

4. ———— *Ambiguous Message — Explanation.* The meaning of a telegraphic message from a live-stock broker to a shipper, couched in such terms as to be readily understood by the shipper, but which is ambiguous and to a certain extent unintelligible to persons not engaged in the stock business as shippers, may be explained by the testimony of the broker who sent it.

5. Original Paper — *Loss — Contents Proved by Parol.* A person who has suffered loss by the neglect of a telegraph company to transmit and deliver a message, and who serves upon the agent of the company a written demand for damages, and in so doing gives the agent a copy of said writing, but keeps the original, and the agent accepts service in writing on said original, and proof is made of the loss of such original, may prove the contents thereof by parol.

*Error from Atchison District Court.*

THE facts are fully stated in the opinion.

*Waggener, Martin & Orr*, for plaintiff in error.

*J. F. Thompson*, and *Smith & Solomon*, for defendants in error.

Opinion by STRANG, C.: Action for damages for failing to deliver a certain telegraphic message. The facts are as follows:

The plaintiff in error was a telegraph company, doing business between St. Joseph, Missouri, and Sabetha, Kansas. The defendants in error were partners, doing business at the latter place, and engaged in shipping hogs. They had purchased of the farmers in the neighborhood of Sabetha a lot of hogs, which they designed shipping to market, either at St. Joseph or Kansas City. The hogs were to be delivered at Sabetha, by the farmers, on the 12th of January, 1885. Prior to that date the defendants had employed one E. P. Roher, a live-stock commission merchant, or broker, at St. Joseph, to send them a dispatch from that point on the 12th, informing them of the condition of the hog market at that place on that day. Roher delivered a message containing the desired information, addressed to the defendants at Sabetha, to the plaintiff company at its office in St. Joseph, in time to have reached the defendants so that they might have shipped their hogs to St. Joseph. But the message was never transmitted, or, at least, never delivered to the defendants, although they called for it at the company's office at Sabetha four times on that day. Not hearing from Roher, and supposing on that account that the market was not good at that point, the defendants shipped their hogs to Kansas City, where they were sold at an average price of $4.20 per hundred. Subsequently the defendants learned that if they had shipped to St. Joseph on that day they would have received $4.30 per hundred for their hogs, and saved the freight from St. Joseph to Kansas City;

and that, therefore, they had suffered a loss of ten cents per hundred on the gross weight of their hogs, and the difference in freight between St. Joseph and Kansas City, aggregating $225. Defendants in error claim that this loss was suffered by them because of the negligence of the plaintiff in error, in failing to transmit and deliver to them at Sabetha the message delivered to it by Roher at St. Joseph. The plaintiff in error denied negligence on the part of the company, and alleged negligence on the part of the defendants in error; which they, in turn, denied in their reply. A change of venue was taken, and the case sent from Nemaha county to Atchison county, where on the 19th day of March, 1888, it was tried by the court without a jury. The court made findings of fact and of law, and entered judgment thereon in favor of the defendants in error for $222.90. The plaintiff in error filed a motion for new trial, which was overruled, and it now comes here with its case-made, alleging numerous errors on the part of the court trying the cause, and asks that the case be reversed.

The first error discussed by the plaintiff in error in its brief, is the action of the court in overruling a motion to suppress a deposition. The grounds of the motion are: First, the deposition has not been duly certified as provided by law; second, the witnesses were not sworn according to law; third, the deposition was not taken, sealed up, and authenticated as provided by law.

We regard the second ground stated in the motion for the suppression of the deposition as a mere elaboration of the first, serving to point out the specific reason why the deposition is not properly certified. We will therefore treat these two grounds as constituting but one reason why the deposition ought to have been suppressed. This question involves a construction of our statute on this subject. Paragraph 4454, General Statutes of 1889, reads as follows:

"The officer taking the deposition shall annex thereto a certificate showing the following facts: That the witness was first sworn to testify the truth, the whole truth, and nothing

but the truth; that the deposition was reduced to writing by some proper person, naming him; that the deposition was written and subscribed in the presence of the officer certifying thereto; that the deposition was taken at the time and place specified in the notice."

This is all the paragraph there is in our statutes relating to the character of the certificate to be annexed to a deposition by the officer taking the same. It will be seen by an examination of this paragraph, that the language of the statute is, that the certificate attached to the deposition by the officer taking it must show "that the witness was first sworn to testify the truth, the whole truth, and nothing but the truth." The language of the certificate attached to the deposition in this case is, that the witnesses "were by me sworn to testify the whole truth of their knowledge touching the matter in controversy aforesaid." It is conceded that the certificate attached to the deposition by the officer taking the same must conform substantially to the requirements of the statute. The question on this assignment, then, is, Are the words in the certificate, "sworn to testify the whole truth," substantially the same as the words "sworn to testify the truth, the whole truth, and nothing but the truth," contained in the statute? Our first inclination upon examining this case was, to say that, while the language of the certificate is not identical with that of the statute, it is substantially the same. But a more careful and analytical examination of the language of the statute satisfies us that it imports something more than the language of the certificate. To be sworn to testify the truth, the whole truth, and nothing but the truth, imposes upon the witness an obligation that is not imposed upon him when sworn to testify the whole truth. A witness under examination, being asked if he could tell any more, in response said: "Yes, I could tell a good deal more, but that is all I know." It seems to us that this question and answer illustrate this case. What is there to prevent a witness who has already told all he knows —that is, the whole truth—from telling more that he does not know, that is, more that is not the truth? The statutory

form requires him to tell nothing but the truth, while the form of the certificate does not obligate him to cease when he has told the whole truth. We therefore think the certificate in the deposition is insufficient. The authorities sustain this view of the case. In those states having statutes which prescribe the form of the certificate to be annexed thereto by an officer taking a deposition, the great weight of authority requires a strict conformity to the statutory requirements. In the states which have no statute prescribing a form for the certificate, and in which depositions are taken under a commission, or rule of court, greater laxity prevails in relation to the mode of taking and certifying them. In *Bacon v. Bacon*, 33 Wis. 147, the court says: "Where the statutes prescribe a form of oath to be administered to a witness whose deposition is taken out of the state, that form must be observed, or the deposition will be suppressed."

1. Deposition—statute—defective certificate—error.

In *Baxter v. Payne*, 1 Pin. 504, Judge Miller, delivering the opinion, says:

"The deposition of William Pyncheon was offered in evidence, which was objected to by the defendant, for the reason that the justice does not certify how the oath was administered to the witness. The authority to take testimony in this manner, being in derogation of the rules of the common law, has always been construed strictly; and therefore it is necessary to establish that all the requisites of the law have been complied with before such testimony is admissible. Before a deposition should be allowed to be read in evidence, every requisite of the statute must have been substantially and fully complied with. This deposition was taken at the instance of the plaintiff, for the reason that the witness resided more than thirty miles from the place of trial, in pursuance of a written agreement between the parties, and in their presence. In the commencement and body of the deposition, it is stated that the witness 'being duly sworn doth depose and say as follows:' The certificate of the justice sets forth that the witness 'was first sworn in the usual manner of taking depositions.' The statute requires that the deponent shall be sworn to testify the truth, the whole truth, and nothing but the truth. There was error in overruling the objection to the reading of this deposition."

In *Goodhue v. Grant*, 1 id. 556, the same court says:

"A deposition cannot be read in evidence unless it plainly and satisfactorily appears from the certificate of the justice that all the requirements of the statute have been fully complied with, and no presumption will be indulged in to supply any defect."

In pointing out what the certificate must show, the court says:

"It must also state, according to §§ 14 and 16 of the same act, that the deponent was sworn to testify the truth, the whole truth, and nothing but the truth. The legislature intended that every part or requisition of the rule should be equally important and binding; consequently the court cannot relax or change it."

In *House v. Elliott*, 6 Ohio St. 498, the objection to the deposition was that the certificate annexed to the deposition did not show that the witness was first sworn. The court says: "This is a compliance with the form prescribed in Swan's Statutes of 1841, but does not meet the requirement of the code. There must be a certificate annexed to the deposition, by the officer, that the witness was first sworn." The court in that case held that, where the caption of the deposition showed that the witness was first sworn, the certificate must be held sufficient, as the caption must be considered a part of the certificate. Although nothing is said about it in the brief in this case, attention may be called to the fact that the deposition does not, either in the certificate or in the caption thereof, in terms, show that the witnesses were *first* sworn.

In Maine, the statute requires that a deponent, before giving his deposition, should be sworn to "testify the truth, the whole truth, and nothing but the truth, relating to the cause or matter for which the deposition is to be taken;" and the court, in *Brighton v. Walker*, 35 Me. 132, held that "A caption, which certifies that the deponent was first sworn according to law, to the deposition by him subscribed, does not show a compliance with the statute requirement. A recital in the caption that the deponent was sworn 'to testify the truth, and nothing but the truth,' is fatally defective. It should appear that the de-

ponent was at least sworn according to law; and if it does not so appear, it is fatal." (*Call v. Perkins*, 68 Me. 158; *Reed v. Boardman*, 20 Pick. 441–444, there cited.)

In *Lund v. Dawes*, 41 Vt. 372, the court says: "It is very clear from the statute above cited, and from the decisions in this state, that the certificate of the authority taking the deposition must show that the person making the deposition made oath to it as prescribed by statute."

"In accordance with the decision of this court in *Brighton v. Walker*, 35 Me. 132, (cited above,) as the certificate of the magistrate does not show that the oath required by statute has been administered, the deposition of Parsons must be regarded as having been improperly admitted. It is to be regretted that a verdict should be set aside for an error of the magistrate, which might have been amended at the trial, but the requirements of the statute cannot be disregarded." (*Parsons v. Huff*, 38 Me. 137. See also 15 N. H. 371; *Bell v. Morrison*, 1 Pet. 351; *United States v. Smith*, 4 Day, 121; 2 Pet. Dig. 41.)

This case was pending in the trial court during several terms after the motion to suppress the deposition was filed. The deposition might have been withdrawn, with leave of court, and returned to the officer who took the same, and he might have corrected the form of the certificate if the proper form of oath was really administered by him to the witness. Counsel for the defendants in error refer us to but one case upon this question—*The State v. Baldwin*, 36 Kas. 1. An examination of that case throws no light upon this question. The question there decided is neither the same nor similar to the one presented here.

The third ground contained in the motion for the suppression of the deposition is, that the deposition was not sealed up and authenticated as required by law. There is nothing in the record showing how the deposition was sealed up and authenticated, and therefore we cannot consider this question.

The second assignment for error is, that the court erred in permitting a copy of the message delivered by Roher to the plaintiff company, for transmission to the defendants, to be

read in evidence. The contention is, that no proper foundation had been laid for its introduction. The copy offered was identified as a true copy of the original by Roher, by Lee, and substantially by Keneble, the bookkeeper of the plaintiff company at St. Joseph. The evidence of A. F. Washington, who was manager of the office of the plaintiff company at St. Joseph, Mo., where the dispatch in question was delivered, shows that the original messages are kept in the office where received for six months, and are then sent to Chicago and destroyed. The evidence of Jacob Levin, who succeeded Washington as manager of the plaintiff's office at St. Joseph, shows that the original message was not in the St. Joseph office, and not under his control; that original messages are kept in the office where received for transmission six months, and are, by the rules of the company, then sent to Chicago and destroyed. It is true he says he did not see the original message in question in this case destroyed. But he says the rules of the company require them to be destroyed to the end of six months after received. The original message in this case was delivered to the company January 12, 1885, and the depositions of Roher and Lee, who identified the copy, and to which said copy was attached as an exhibit, were taken more than fourteen months afterward. We think the foundation for the admission of the copy was sufficiently established, and that the copy was properly admitted in evidence.

2. Telegram—copy of message—evidence.

The third point made by plaintiff in its brief is, that the court erred in refusing to strike out of the deposition of Valentine W. Emmert his testimony that "the market value of good average 300-pound hogs at St. Joseph, Mo. on the 12th and 13th days respectively of January, 1885, was $4.30 gross." The argument is that the evidence of the value of the hogs at St. Joseph was too remote, as fixing any basis upon which to determine the amount of damage that the plaintiff had sustained. The defendants lived at Sabetha, Kansas. St. Joseph was the nearest market of any importance, for hogs, to Sabetha. The evidence shows that the defendants designed shipping their

hogs there; had made arrangements by which they were to be informed of the condition of the market there; and would have shipped there if the defendant company had done its duty and transmitted the information contained in the message it failed to send to the defendants. And the evidence shows that, if they had shipped to St. Joseph at the time they shipped to Kansas City, they would have received ten cents a hundred more for their hogs than they did receive at Kansas City, and would have saved the freight from St. Joseph to Kansas City. We think the measure of damages adopted by the trial court the correct one.

3. Message—non-delivery—measure of damages.

The plaintiff in error complains next that Roher was permitted to explain the meaning of the message received in evidence. While the language of the message was such as to be readily understood by one engaged in the shipment of hogs, it was couched in such terms as to render it ambiguous, and to a certain extent unintelligible to persons not engaged in such business. It is therefore entirely proper to permit its meaning to be explained to the jury by the person who sent it. The substance of the fifth assignment we think wholly immaterial, and therefore no error could be predicated thereon.

4. Ambiguous message—explanation.

The sixth complaint is, that the defendants, over the objection of the plaintiff, were permitted to prove what the hogs sold for in Kansas City, Missouri, on the 14th of January, 1885. Kansas City, Missouri, is the next nearest hog market to Sabetha after St. Joseph, and the market to which the defendants intended to ship their hogs if they did not ship to St. Joseph, and the market to which they did ship them. The hogs were sold on the market there for the best price they would bring. The admission of this evidence was coupled with evidence showing that on the very day, January 14th, 1885, on which the hogs were sold in Kansas City, they would have brought the price contended for by the defendants, in St. Joseph, Missouri. There can be no question under the evidence, but that if the plaintiff in error had done its duty, and transmitted and delivered the message received by it from

Roher to the defendants, they would have shipped their hogs
to St. Joseph instead of Kansas City. It is equally certain,
under the evidence, that if they had shipped to St. Joseph,
and sold in the market either on the 13th or 14th days of
January, 1885, they would have received ten cents a hundred
more for their hogs than they got for them in the Kansas City
market. The defendants, therefore, suffered a loss by shipping
to the Kansas City market. Having suffered a loss, how is
the amount of that loss to be ascertained? The law provides
a measurement for loss or damages in cases of this kind, and
resort must be had to the measurement so provided. The only
difficulty there is in the matter is in selecting the proper meas-
ure by which to gauge the loss or damages. The plaintiff in
error claims that the difference in price of the two markets, St.
Joseph and Kansas City, is no proper measure of the damages
suffered by defendants, and says that they could as well have
sold them in the London or San Francisco market, and made
the difference in price between either of those markets and St.
Joseph the measure of damages. We do not think so. We
will not speculate upon what might or might not be the proper
measure of damages if the defendants had shipped their hogs
to so remote a market as either of those named, but will con-
tent ourselves by examining the actual surroundings of the
case as disclosed by the evidence, and search for the proper
measure of damages in that neighborhood. Looking over the
real case in hand, we think the measure of damages approved
and adopted by the trial court the simple, natural, and proxi-
mate measure for damages in cases of this kind, and therefore
the proper measure to have applied in estimating the damages
in this case. The shrinkage on the weight of the hogs in
transit, and the difference in the price of feed in Kansas City
and St. Joseph, in relation to which some evidence was intro-
duced, and of which plaintiff in error complains, was not made
a part of the judgment by the court below; hence, no injury
to the plaintiff flowed from that evidence.

The plaintiff in error complains that the defendants were
permitted to make oral proof of the contents of a written de-

mand which was served upon the agent of the defendant company. It is alleged that there was no proper foundation laid for the proof so made. ·The plaintiff in error treats the copy of the written demand delivered to the agent as the original. · But the evidence shows that, while a copy of the demand was delivered to the agent, he accepted service, in writing, upon the original, which was kept by the defendant in error serving the same.· This original demand was then sent by the defendants in error to their attorneys, who received it, and had it about their office until it became lost; that they made search for it in their office among their papers where it was kept, and could not find it. The court, upon this showing, permitted parol proof of its contents. We see no error in this. We are compelled, however, to recommend a reversal of this case, because of error in overruling the motion to suppress depositions.

5. Original paper —loss—contents proved by parol.

By the Court: It is so ordered.

HORTON, C. J., and VALENTINE, J., concurring.

JOHNSTON, J. : I am satisfied with all the conclusions stated, except the one which holds it to be prejudicial error not to have suppressed the depositions which were read. The statutory requirement in regard to swearing the witnesses should be substantially followed, and the fact of the swearing should be certified to by the officer taking the deposition. The record in this case not only recites that the witnesses were sworn at the beginning of their depositions, but the officer who took them certifies that the deponents were sworn "to testify the whole truth of their knowledge touching the matter in controversy." While this is not a strict literal compliance with the statute, the deviation is so slight and immaterial that the oath may be regarded as a substantial compliance with that required in the statute. As a substantial compliance is sufficient, I think the depositions were properly admitted in evidence, and further, that the judgment of the district court should be affirmed. ( *Welborn v. Swain,,* 22 Ind. 194.)