## UNITED STATES of America, Plaintiff-Appellant,

v.

## Phillip Rae MORGAN, Defendant-Appellee.

### No. 90–1054.

United States Court of Appeals, Tenth Circuit.

Jan. 10, 1991.

Joseph Mackey, Asst. U.S. Atty., D. of Colorado, and Robert J. Erickson, Dept. of Justice, Washington, D.C. (Michael J. Norton, U.S. Atty., D. of Colorado, with them on brief), Washington, D.C., for plaintiff-appellant.

Charles Szekely, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, with him on brief), Denver, Colo., for defendant-appellee.

Before LOGAN, EBEL, Circuit Judges, and RUSSELL,* District Judge.

EBEL, Circuit Judge.

The government appeals the dismissal of appellee's federal indictment which the district court held was returned outside the five-year statute of limitations for non-capital crimes. In this appeal we consider the issue whether a fugitive from state justice who subsequently commits an unrelated federal offense is precluded from invoking the federal statute of limitations on the subsequent crime because his flight from state justice tolled the statute of limitations. In the lower court, appellee successfully argued that because his federal crime was committed more than five years before his indictment, the statute of limitations provided by 18 U.S.C. § 3282 (1988) had run. In opposition, the government claimed that the statute of limitations was tolled by 18 U.S.C. § 3290 (1988), which withholds any statute of limitations from an individual "fleeing from justice." Because we conclude that appellee was a fugitive from justice and, therefore, there has been a sufficient tolling of the statute of limitations to preclude the limitations period from having run, we reverse and remand.

---

* The Honorable David L. Russell, Judge, United States District Court for the Eastern, Northern, and Western Districts of Oklahoma, sitting by designation.

## I. FACTS

The facts necessary to decide this case are not in dispute. On January 20, 1982, appellee was charged in Massachusetts with armed robbery, assault with a dangerous weapon, and unlawful possession of a gun. Before trial, appellee escaped. Eventually, Massachusetts enforcement authorities determined that appellee had fled their jurisdiction. On February 21, 1984, upon application by the Middlesex County District Attorney's Office, the United States magistrate issued an unlawful flight to avoid prosecution warrant. While a fugitive, appellee assumed the alias of "David White." Under this alias, sometime towards the end of 1984, he and his family fled New England, eventually settling in Boulder County, Colorado.

While living under the name David White, on November 30, 1984, appellee allegedly committed a federal crime by robbing the World Savings and Loan in Boulder. During appellee's nine months in Boulder County, he obtained housing under the name David White and purchased an automobile which was registered under that alias. Although changing residences once, appellee lived continuously in Boulder County under the David White alias.

On August 15, 1985, pursuant to the warrant, authorities arrested appellee in Boulder County for the Massachusetts robbery. Appellee was returned to that state, where he was eventually convicted. By 1987, through analysis of fingerprints left at the scene of the Boulder savings and loan robbery, police began to believe that the perpetrator of that crime was Phillip Rae Morgan, the real name of appellee. The federal investigation began to focus on appellee who was now in a Massachusetts jail under the name Morgan. In November of 1989, appellee was returned to Colorado to face charges in connection with the Boulder savings and loan robbery. On December 14, 1989—exactly five years and two weeks after the Boulder bank robbery—an indictment was returned against appellee charging robbery of the Boulder savings and loan.

Appellee thereafter moved to dismiss the indictment, claiming that it was barred by 18 U.S.C. § 3282, which reads:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

The government contested appellee's motion, claiming that 18 U.S.C. § 3290 tolled the statute of limitations. That statute reads: "No statute of limitations shall extend to any person fleeing from justice." The government claimed that because appellee was a fugitive from Massachusetts, the statute of limitations on the Boulder bank robbery should be tolled until appellee's arrest for the Massachusetts crime on August 15, 1985.

## II. DISCUSSION

There are two issues that we must address in this case. First, we are required to decide whether the tolling provision of 18 U.S.C. § 3290 applies when the crime at issue occurred *after* defendant became a fugitive from another crime and after defendant had created a new identity under which he lived openly in the jurisdiction where he allegedly committed the subsequent crime. Additionally, we must decide whether the *federal* tolling provision should be applied when the defendant was a fugitive from an *unrelated state* crime. Because these are questions of statutory interpretation, we employ the *de novo* standard of review.

### A. Whether Appellee's Preexisting Status as a Fugitive Tolled the Statute

■ As in any case of statutory interpretation, we begin with the plain language of the law. If the statutory language is clear, this will ordinarily end the analysis. "When, as in this case, the statute is unambiguous and free of irrational result, that language controls." *Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist. No. 2*, 861 F.2d 1211, 1214 (10th Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068,

104 L.Ed.2d 633. *See also Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir.1986) ("It is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls.").

In this case the language of the statute is clear and its terms are all inclusive: *"No statute of limitations shall extend to any person fleeing from justice."* [1] 18 U.S.C. § 3290 (emphasis added). There is no dispute that appellee was a person fleeing from the justice of Massachusetts. The plain words of the tolling statute, therefore, would indicate that appellee's status as a fugitive from Massachusetts tolled the statute of limitations for his subsequent federal crime in Colorado.

We see good reasons to conclude that Congress apparently meant what it said. First, a fugitive typically employs methods which make detection by any law enforcement authorities much more difficult. He can be expected to avoid detection not only of the specific law enforcement authorities seeking him, but also of law enforcement authorities in general since it is widely, and correctly, assumed that law enforcement authorities generally act in cooperation with each other. Congress could easily have believed that when an individual is fleeing from justice, the statute of limitations should be tolled for all subsequent federal crimes committed while he is a fugitive because his fugitive status will not only make it more difficult to apprehend him for the specific crime for which he is fleeing but it will also necessarily impede the investigation of any subsequent crime he may commit.

In this case, for instance, the appellee's use of an alias, coupled with his flight across the country and his change of residence within Boulder County, may have increased the difficulty of matching the fingerprints found at the savings and loan

with those listed on file under appellee's real name. Once the fingerprints identified the suspect as *Morgan,* the defendant's true name, the federal authorities had somehow to determine that Morgan was White, and they had to locate him under circumstances where appellee was deliberately making himself difficult to find. In fact, the federal authorities were able to apprehend appellee only after his fugitive status had been terminated through his apprehension and eventual incarceration by the Massachusetts authorities under his real name.

The second reason Congress may have intended such broad and inclusive tolling language was its desire not to reward or encourage fugitives. A statute of limitations is not a constitutional right. Congress may set reasonable conditions for when an accused can take advantage of it. We can readily appreciate that Congress may have enacted the tolling provision because of a belief that a person fleeing from justice should forfeit the privilege of a statute of limitations.

We find support for our conclusions in the opinions of other courts which have read the tolling statute in a similar manner. For instance, in *United States v. Gonsalves*, 675 F.2d 1050 (9th Cir.), *cert. denied*, 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982), the Ninth Circuit reversed the district court which had found "that fleeing from justice in one federal jurisdiction does not toll the statute of limitations on unrelated charges in a different jurisdiction." *Id.* at 1052. The court was "unable to reconcile the district court's restrictive reading of § 3290 with the statute's unqualified language...." *Id.* Most importantly, the Ninth Circuit concluded that "the congressional policies underlying the criminal limitations statute and the 'fleeing from justice' exception to it are harmonized by interpreting § 3290 to deny the benefits

1. Section 3290 has remained virtually unchanged since it was enacted by the First Congress in 1789. *See* An Act for the Punishment of Certain Crimes Against the United States, ch. IX, § 32, 1 Stat. 112, 119 (1850). The only significant modification of the tolling provision occurred when Congress revised and enacted Title 18. *See* 62 Stat. 683 (1948). The revisor's notes

stated that § 583—the direct predecessor of § 3290—"was rephrased and made applicable to all statutes of limitation and is merely declaratory of the generally accepted rule of law." *See* H.R.Rep. No. 304, 80th Cong., 1st Sess., Appendix (1947), *reprinted in* Title 18, Legislative History at 2631 (1948).

of *all* statutes of limitations to a person fleeing from justice in *any* federal jurisdiction." *Id.* Similarly, the Second Circuit, citing *Gonsalves*, found that the § 3290 "exception is comprehensive, in that a person fleeing from justice in one jurisdiction loses the benefit of the statute of limitations for all charges in all federal jurisdictions." *United States v. Catino*, 735 F.2d 718, 721 (2d Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984) (emphasis added). We agree with these cases and find, as did the *Gonsalves* court, that when an individual becomes a fugitive, the balance of equities between the rights of the accused and the investigatory needs of the state "tips in favor of the government[ ] ..., and the accused should be denied the benefits of the statute of limitations." *Gonsalves*, 675 F.2d at 1052.

In this case the defendant, by buying and registering an automobile and acquiring residences under an alias, furthered the effectiveness of his assumed identity and thereby confounded his apprehension. Contrary to the appellee's position, we do not agree that these acts, occurring as they did in the same jurisdiction as where the savings and loan was robbed, should have *assisted* the federal authorities in their search for appellee. Rather, because the police were looking for Phillip Rae Morgan, the defendant's flight across the country, change of residence, and effort to live as David White must have impeded the investigation of the Colorado robbery. Indeed, it appears almost axiomatic that by employing means of concealment and disguise, a fugitive impedes all police investigation and delays justice because "[w]hen an accused knowingly secretes himself, even diligent investigators may be thwarted from uncovering facts essential to the prosecution." *Id.* (footnote omitted). We therefore believe that § 3290 should be interpreted as plainly as it was written, and conclude that a fugitive of justice from one jurisdiction should be denied the statute of limitations for criminal prosecution in all federal jurisdictions during the course of his fugitive status.[2]

## B. Whether Flight From an Unrelated State Crime Tolls the Federal Statute of Limitations

■ At oral argument the issue was raised whether the appellee's flight from an *unrelated state* crime could toll the *federal* statute of limitations. Again, the language of § 3290 places no limits on the justice from which the defendant must flee before the tolling provision applies. Common sense indicates that the same reasoning we used in the first part of our opinion would again counsel that we give the same plain reading to the statute's unqualified language in answering this question. Fortunately, the Supreme Court has already spoken in this area, and thereby has validated our intuition.

In *Streep v. United States*, 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365 (1895), the Court decided a case where the defendant claimed that the predecessor of § 3290 only applied to fugitives from *federal* justice. In *Streep*, the defendant had fled to Europe upon being indicted on state charges in New York. While abroad, the defendant was indicted on related federal charges. The Court held his flight from state justice also had the effect of tolling the federal statute of limitations. The Court noted that the federal tolling provision "speaks generally of 'fleeing from justice,' without restriction either to the justice of the State,

---

**2.** We wish to make it clear that this decision does not categorize everyone who flees the scene of a crime as a fugitive. In this case, we do not need to address the outer limits of the degree of flight and concealment necessary to categorize a person as a fugitive from justice, nor do we need to determine the outer limits of when a person ceases to be a fugitive from justice. Here it is abundantly clear that appellee was a fugitive from the Massachusetts crime from the time that he fled Massachusetts and assumed a false identity until he was recaptured and returned to Massachusetts. Indeed, appellee was described in his own legal brief submitted to this court as "a fugitive from the State of Massachusetts, and had been since 1982" when the robbery of the savings and loan occurred. Appellee's Answer Brief at 3. Finally, we do not need to address the various hypothetical situations raised by the dissent. The issues raised by those situations can be addressed if, and when, they come before us in a real case or controversy.

or to the justice of the United States." *Id.* at 134, 16 S.Ct. at 247.

While it is true that the state criminal charges from which the defendant was fleeing in *Streep* arose out of the same facts which gave rise to the subsequent federal prosecution, we do not find that distinction material. The language of the Court's holding in *Streep,* and the statute itself, is clear and inclusive. Whether an individual is a fugitive from federal or state justice, his apprehension for subsequent unrelated federal crimes is necessarily hampered by his flight from justice. Therefore, the fact that appellee was fleeing prosecution from unrelated state crimes offers him no assistance in his attempt to take advantage of the federal statute of limitations. Appellee was fleeing justice—be it state or federal—and thereby triggered the tolling provision of § 3290; he cannot now have the privilege of the federal statute of limitations.[3]

## CONCLUSION

Because we find that 18 U.S.C. § 3290 tolled the statute of limitations on appellee's federal crime, this case is REVERSED and REMANDED for further proceedings consistent with this decision.

LOGAN, Circuit Judge, dissenting:

I cannot agree with the majority that the plain meaning of "no statute of limitations" in 18 U.S.C. § 3290 means with respect to any crime. A much more natural reading of § 3290 is that no statute of limitations runs with respect to the crime from which the individual is fleeing. Any other reading leads to absurd results.

For example, under the majority's reasoning, apparently we would not distinguish between a man fleeing indictment for a political crime in South Africa or China, basketball coach Bobby Knight who was wanted in Puerto Rico for assault, and a savings and loan executive for whom Texas authorities have issued an arrest warrant. The statute of limitations would be tolled for any federal crime committed within the United States by such a person until he is apprehended and returned to the jurisdiction in which he is wanted. Under the majority's reasoning, there is no apparent distinction between misdemeanors and felonies. Thus, if a person has an outstanding arrest warrant for traffic violations in another state, presumably no statute of limitations runs on any federal crime the individual commits where he now resides. Further, the majority infers that the individual need not have been identified and the subject of an indictment or arrest warrant to be a fugitive. Thus, arguably anyone who commits a violation of the federal or state income tax laws loses the benefit of the statute of limitations on any past or future federal crime, even before he has been identified as a wrongdoer. I simply cannot believe that was Congress' intent.

Finally, the majority's position seems to create due process problems for the courts. The Due Process Clause of the Fifth Amendment requires dismissal of an indictment if it is shown "that the pre-indictment delay ... caused substantial prejudice to [the accused's] right[] to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971) (footnote omitted). Considering the evidence in the record that the government delayed indicting Morgan for more than four years after he ceased being a fugitive, there are serious questions concerning the government's reason for the delay and whether Morgan was prejudiced by it.

**3.** *United States v. Wazney,* 529 F.2d 1287 (9th Cir.1976), offers additional support for our position. There, a defendant had fled both federal and unrelated state charges, and the court concluded that he was a fugitive from justice such that § 3290 tolled the statute of limitations. The court stated that "knowledge by ... [defendant] that he was wanted by police, coupled with his failure to submit to arrest, is enough...." *Id.* at 1289. The court in *Gon-* salves later concluded that the holding of *Wazney* was unclear as to whether flight from a *state* crime was enough to toll the federal statute of limitations. Nevertheless, the *Gonsalves* court did acknowledge that the statute of limitations in *Wazney* was tolled even though it was unclear from the facts whether the defendant there even knew he was being prosecuted by federal authorities. *Gonsalves,* 675 F.2d at 1053 & n. 6.

In the instant case, I would hold that § 3290 did not toll the statute of limitations on the bank robbery charge against Morgan. First, regardless of his Massachusetts fugitive status, Morgan is not a fugitive from justice with respect to the Colorado bank robbery under any court's interpretation of § 3290 or its predecessor statutes. If a fugitive is defined as one who knew he was being sought for the particular crime and removed himself from his usual place of abode with intent to conceal himself to avoid arrest, as most cases hold, *see United States v. Marshall*, 856 F.2d 896, 900 (7th Cir.1988); *United States v. Singleton*, 702 F.2d 1159, 1169–70 (D.C.Cir. 1983); *Jhirad v. Ferrandina*, 536 F.2d 478, 483–84 (2d Cir.), *cert. denied*, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); *United States v. Wazney*, 529 F.2d 1287, 1288–89 (9th Cir.1976); *Donnell v. United States*, 229 F.2d 560, 564–65 (5th Cir.1956); *Brouse v. United States*, 68 F.2d 294, 295 (1st Cir.1933); *Ferebee v. United States*, 295 F. 850, 851 (4th Cir.1924); *Greene v. United States*, 154 F. 401, 411–12 (5th Cir.), *cert. denied*, 207 U.S. 596, 28 S.Ct. 261, 52 L.Ed. 357 (1907), Morgan does not qualify as to the Colorado robbery. The few cases that do not discuss or require an intent to avoid prosecution are those in which the fugitive is outside the jurisdiction, *King v. United States*, 144 F.2d 729, 731 (8th Cir.1944), *cert. denied*, 324 U.S. 854, 65 S.Ct. 711, 89 L.Ed. 1413 (1945); *McGowen v. United States*, 105 F.2d 791, 792 (D.C.Cir.), *cert. denied*, 308 U.S. 552, 60 S.Ct. 98, 84 L.Ed. 464 (1939); here, Morgan did not leave Colorado. I have not found a case holding that a person was a fugitive when the police had not identified the individual as a suspect and the individual stayed within the jurisdiction, residing in the abode he occupied at the time of the crime. Thus, by no stretch of the imagination can Morgan be regarded as a fugitive "fleeing from justice" with respect to the Colorado bank robbery for which he has now been indicted.

Second, an interpretation that § 3290 tolls the statute of limitations for the Colorado bank robbery because of Morgan's prior fugitive status from Massachusetts is at odds with the reasons behind adoption of statutes of limitations and extends the scope of § 3290 far beyond its current interpretations.

The underlying purpose of a statute of limitations is to "protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). All statutes of limitations provide "predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *Marion*, 404 U.S. at 322, 92 S.Ct. at 464 (footnote omitted). Statutes of limitations "balance the government's need for sufficient time to discover and investigate the crime against the defendant's right to avoid perpetual jeopardy for offenses committed in the distant past." *United States v. DiSantillo*, 615 F.2d 128, 135 (3d Cir.1980).

Criminal statutes of limitations, in particular, are to be liberally interpreted in favor of the defendant. *Marion*, 404 U.S. at 322 n. 14, 92 S.Ct. at 464 n. 14; *Waters v. United States*, 328 F.2d 739, 742 (10th Cir. 1964). Therefore, tolling of statutes of limitations should be an exception narrowly construed for all the reasons that led to the enactment of statutes of limitations in the first place. In the case of § 3290, its enactment "reflects a Congressional determination that defendants should not gain advantages of statutory limitations by means of flight." *United States v. Mullins*, 562 F.2d 999, 1000 (5th Cir.1977), *cert. denied*, 435 U.S. 906, 98 S.Ct. 1452, 55 L.Ed.2d 496 (1978). Here I see no justification for tipping the balance in favor of the government by tolling the statute for the Colorado robbery. Morgan was arrested on August 15, 1985, pursuant to a Massachusetts unlawful flight warrant. Following his conviction on state charges, Morgan was incarcerated in Massachusetts before returning to Colorado to face the bank robbery charge. He was finally indicted for the Colorado bank robbery on December 14, 1989—five years and two weeks after

the crime was committed and four years and four months after he was identified by his real name and was no longer a fugitive. Under these facts, it cannot be said that Morgan's fugitive status hindered the government's investigation beyond that normally associated with any crime.

The majority relies on the assertion that Morgan's use of an alias hindered his prosecution for the bank robbery because it made identification of his fingerprint found on the scene more difficult. The majority opinion notes, however, that the fingerprint was not connected to Morgan until 1987, nearly two years after he ceased to be a fugitive from Massachusetts. Even if the alias were to hinder prosecution, it would be so only because of the peculiar facts of this case, i.e., a fingerprint identified with the fugitive's real name. Under most circumstances, if one who is using an alias commits a robbery and thereafter returns to the same abode he would more likely confuse investigators by resuming use of his real name than if he continues use of his alias. Moreover, every criminal hopes that he is not caught and takes some action to prevent detection. Surely Congress did not intend tolling of the statute of limitations whenever a criminal does something to make detection more difficult; tolling is the exception, not the rule.

It is true that the cases upon which the majority relies, *United States v. Catino*, 735 F.2d 718, 720–21 (2d Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *United States v. Gonsalves*, 675 F.2d 1050, 1052 (9th Cir.), *cert. denied*, 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982); and *Wazney*, 529 F.2d at 1288, hold that fugitive status for one crime tolls the statute of limitations for other crimes. However, in each case there had been either an indictment or an arrest warrant issued identifying the defendants *while* they were fugitives. *Catino*, 735 F.2d at 718, 721; *Gonsalves*, 675 F.2d at 1051 n. 2; *Wazney*, 529 F.2d at 1288. In *Streep v. United States*, 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365 (1895), Streep fled the country to avoid state prosecution for the identical crime for which the federal government indicted him. The Court reasoned that "it is sufficient that there is an intent to avoid the justice of the state having criminal jurisdiction over the same territory and the same act." *Id.* at 135, 16 S.Ct. at 247.

*Streep* and the cases cited by the majority stand for the proposition that when an individual is a fugitive from a state crime and, while he is still a fugitive, has an arrest warrant or indictment issued for a federal crime, he is impeding arrest or prosecution by remaining a fugitive. He has been identified and should be considered a fugitive for both crimes. So viewed, the exception is narrow and arguably is consistent with the purpose behind the statute of limitations and its tolling. The majority's opinion goes far beyond this. Morgan was not the subject of an arrest warrant for the Colorado bank robbery nor an indictment until long after he ceased being a fugitive from Massachusetts justice. His fugitive status did not impede arrest or prosecution for the Colorado crime. Therefore, there is no justification for extending the scope of § 3290 to the case before us.

I would affirm the district court's dismissal of the indictment.