**UNITED STATES of America, Plaintiff,**

**v.**

**657 ACRES OF LAND, MORE OR LESS, IN PARK COUNTY, WYOMING, In Township 56 North of Range 103 West of the 6th P.M., Section 1: SW¼ SE¼; Section 12: Lots 2, 3, 5, 8, 9 and 10; Section 13: Lot 3; All of Tracts 46, 47, 54; Tracts 55–C, 55–D and 55–3; together with all improvements thereon and appurtenances and hereditaments thereunto or in anywise appertaining; excepting only those rights and interest of record, Defendant.**

No. 96–CV–160–J.

United States District Court, D. Wyoming.

Sept. 29, 1997.

Carol A. Statkus, Asst. U.S. Atty., L. Robert Murray, U.S. Attorney's Office, Cheyenne, WY, for Plaintiff.

Richard C. Slater, Bayless, Slater & Macy, Cheyenne, WY, Robert C. Stone, Hollywood, FL, for Defendant.

### ORDER DENYING CLAIMANT'S MOTION TO DISMISS AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

The Motion to Dismiss filed by claimant, Stewart Allan Bost, and the Cross Motion for Summary Judgment filed by the United States of America, plaintiff in the above captioned proceeding, the parties' responses one to the other, came before the Court for consideration. The Court, having considered the motions, the responses, the pleadings of record, the applicable law, and being fully advised in the premises, FINDS and ORDERS as follows:

#### Background

The government filed its Verified Complaint for Forfeiture in Rem Pursuant to 21 U.S.C. § 881 on July 19, 1996. The Affidavit of United States Drug Enforcement Administration Special Agent David Lytla is attached as Exhibit 3 to the Verified Complaint. With its complaint, the government seeks forfeiture of certain real property in Park County, Wyoming, approximately 657 acres of land located on the Clark's Fork of the Yellowstone River. The government seeks forfeiture of the real property as property traceable to Bost's 1986 illegal exchanges of cocaine, and in the alternative, as property used to launder criminal proceeds. Notice of forfeiture was published in two

Wyoming newspapers for four consecutive weeks beginning on August 4, 1996. Claimant Bost was served with direct notice on August 28, 1996. Bost had filed a claim on August 14, 1996 and it is the only claim filed in this case.

The Court entered a stay on August 29, 1996, which expired January 3, 1997. Bost requested, and was granted, an extension to file his answer within 20 days of expiration of the stay. Without leave of court and without an order lifting the stay, Bost filed his motion to dismiss on October 8, 1996. In his motion, Bost alleges that this action is barred by the five year statute of limitations in 19 U.S.C. § 1621.

The government's opposition to the motion was filed October, 25, 1996. It asserts that the motion to dismiss violated the stay and also notes failure to comply with local rules of this Court regarding motion practice and association with local counsel. On June 13, 1997, local counsel for claimant Bost, Richard C. Slater, filed an appearance. A motion for admission pro hac vice for attorney Robert C. Stone was filed July 8, 1997; an order granting the motion for attorney Robert C. Stone to appear pro hac vice on behalf of the claimant was entered July 14, 1997.

Bost argues that the civil forfeiture is barred by the statute of limitations. He asserts that no suit or action pursuant to 19 U.S.C. § 1621 may be commenced unless it is bought within five years after the time when the alleged offense was discovered. Bost was indicted August 8, 1989 in the Southern District of Florida on various counts of cocaine trafficking crimes committed between August 1985 and July 1986. Bost had, at the time that the charges were filed, purchased the Park County property but this was not known to the United States. Bost was a fugitive from justice until July 9, 1996 when he was arrested, and following an identity hearing in the District of Wyoming on July 12, 1996, was transferred to the Southern District of Florida. Bost pleaded guilty to Counts I and II in the indictment on October 8, 1996. He was sentenced to a six-year term of imprisonment and fined $250,000 on December 19, 1996. Bost now contends that as of August 8, 1989 and thereafter, Bost's

interests in the property had been recorded for all the world to see and that sufficient facts were present to alert the government to Bost's interest in the property. He argues that waiting to seek civil forfeiture until the summer of 1996 is an unreasonable delay and that this action was brought outside of the statutory time period.

The government responds that even before Bost was indicted, he had gone into hiding and had begun concealing his identity and laundering his drug money. Bost had been declared to be a federal fugitive September 21, 1989.

In January of 1986, Bost acted as a "boat captain" for a Florida cocaine smuggling ring. In six months, from January of 1986 through June 1986, Bost smuggled approximately 3,000 kilograms of cocaine from the Bahamas to Key Largo and was paid at least $1,350,000 in those six months for his crimes. Bost's involvement in the smuggling activities were described to a government agent in May of 1988 by an individual named William E. Wood, who during debriefing, detailed Bost's activities in the smuggling ring.

Wood met Bost in 1985 and knew Bost as a boat captain who had previously smuggled marijuana into the United States from the Bahamas. Between January 1986 and June 1986, Bost smuggled five loads of cocaine for Woods. Wood stated that he had paid Bost at least $1,350,000 for five separate cocaine loads: 1) January 1986: 400 kilograms for $250,000; 2) February 1986: 400 kilograms for at least $250,000; 3) March 1986: 1100 kilograms for $350,000; 4) May 1986: 800 kilograms for at least $250,0000; and 5) June 1986: 400 kilograms for $250,000.

Wood was interviewed specifically by an agent of the customs service for the purpose of identifying forfeitable assets held by members of the smuggling ring. Wood provided the agent with details regarding assets of members of the smuggling ring, but as to Bost, he identified only a Key Largo, Florida home that he believed Bost owned. Wood had no information regarding other property owned by Bost.

Before the indictment was issued in 1989, Bost's last known whereabouts were in Okla-

homa City, Oklahoma. The United States had no knowledge of Bost's whereabouts from the date of indictment until his arrest in July of 1996. In March 1988, Bost surrendered his Florida driver's license for an Oklahoma license in Oklahoma City. When he did so, he changed his name from Stewart Allen Bost to Allen Bost Stewart and used a fictitious address in applying for the Oklahoma license. In 1991, Bost exchanged his Oklahoma driver's license for a Colorado driver's license. The Colorado license was renewed in May 1996 and is in the name of Allen Bost Stewart, also with a fictitious address.

Bost had purchased the defendant property from Carl and Martha Putz on September 17, 1987. He paid the Putzes an undetermined amount of cash, less than $1,300,000. On March 10, 1988, Bost recorded the 1987 warranty deed from the Putzes to Bost. One minute later, a warranty deed conveying the property from Stewart Bost to his alias, Allen Stewart, was recorded. As of this date, Allen Stewart appears as the record owner of the defendant property in the Park County, Wyoming records. Under his alias Allen Stewart, Bost was a part-time Wyoming rancher.

In 1988, under his alias, Allen Stewart submitted an incomplete application for grazing privileges to the Bureau of Land Management. With his application, Bost submitted copies of the warranty deed in the name of Stewart Bost and the warranty deed in the name of Allen Stewart. The incomplete grazing application was not considered by the BLM because the grazing rights to the property were then suspended because the land had been over-grazed and required a period of rehabilitation.

In 1996, the BLM began reviewing its range file on the defendant property for the purposes of reactivating the grazing permit. The BLM staff in Cody, Wyoming had concerns about issuing Allen Stewart a grazing permit because there had been continuing problems with missing signs, fencing, and blocking a state right-of-way onto the defendant property for public fishing. It had also become concerned that the applicant landowner might have been using a false name to receive a BLM grazing permit.

In February 1996, the BLM's office in Cody involved its law enforcement office in Worland, Wyoming. On February 7, 1996, Bob Dieli, a recreation planner wrote to the BLM law enforcement officer for the area, Dave Stimson. Dieli advised Stimson of the BLM's concerns and advised further that the problems with Allen Stewart would have to be resolved before a grazing permit could be issued. Stimson began investigating these issues because in 1994, Dieli had asked Stimson to investigate the sign removal, fencing and access issues. Dieli and Stimson had attempted to contact Allen Stewart in 1994 but had been unable to reach him at the property. At that time, the BLM had dealt with Bost only as Allen Stewart and was not aware of the possibility that Allen Stewart might have been an alias.

During the course of Stimson's 1996 investigation, because the Cody BLM office had become concerned that the landowner might have been using a false name to obtain a grazing permit, Stimson looked into things further. He learned Allen Stewart was wanted on federal charges involving cocaine trafficking conspiracy. Stimson collected the documents from the BLM range file, including the two warranty deeds and the incomplete grazing application, and submitted the names of Stewart Bost and Allen Stewart to the Rocky Mountain Information Network. He received back from Rocky Mountain Information Network information showing that Stewart Bost was a federal fugitive indicted in the Southern District of Florida in 1989.

As a result of this investigation, Stimson contacted Bill Bort, a deputy United States Marshal stationed in Casper, Wyoming. At that time a fugitive investigation was opened and Bort continued to investigate further. Bort learned about the trail of fictitious driver's licenses with false names, addresses and social security number. He learned that the Casper, Wyoming address in the Allen Stewart deed was fictitious. Bort learned, during surveillance of the defendant property in April of 1996, that Bost had concealed his ownership of a 1988 Ford Bronco parked on the property. The records of the Wyoming Department of Motor Vehicles indicated that a courtesy title had been issued to Jean

Kraukis on March 7, 1988. The Florida title submitted in connection with the courtesy title showed Bost as a first lienholder. The Wyoming courtesy title did not reflect Bost's first lien. The address used by Kraukis, Bost's former girlfriend, was fictitious.

March 22, 1996 Deputy Bort contacted Special Agent Larry Graham of the Drug Enforcement Administration. Bort, Graham, Stimson, and other law enforcement officers arrested Bost at the defendant property July 9, 1996. They approached Bost as BLM personnel wanting to discuss BLM business. Bost identified himself to them as Allen Stewart. After his arrest, Bost made statements to Bort: that he had worked for GM in Michigan for 17 years making $17.00 per hour and had left when he was 34 years old; that he worked as a boat captain for four years running charter trips, but had nearly starved; that he was approached by a lot of drug dealers to run drugs, but held out for a while; that he saw Cubans bringing bales of pot up the canals, just like hay and living fine; that he started piloting boats to other countries, taking them down empty and bringing them back full; that he knew what was in the cargo, but he was just piloting the boats; that he was a boat captain for Wood; that he did not use banks and did not put anything in his name; that he had not filed income tax returns for the past 20 years; and that he had tried hard to become a non-person.

At the time of Bost's arrest, a search warrant was executed at the house on the defendant property in Park County, Wyoming. A number of books and other items of literature were seized about how to conceal a person's identity and assets, including *The Complete Guide to Offshore Money Havens; Around the World Report on the Bahamas; Paper Trip I and II; For a New You Through a New ID; Privacy: How to Get It and How to Enjoy It; and Privacy: Here's All You Need to Know to Make Privacy Work for You.* Also seized were other items of evidence reflecting Bost's concealment of his identity, including a customer receipt for a postal money order in the name of Allen Stewart; a receipt dated April 18, 1996 in the name of Allen Stewart; and two personal letters addressed to Allen Stewart.

Later, Special Agent Graham went to the Park County Assessor's Office and obtained a statement of consideration filed on the defendant property. Bost's former girlfriend, Jean Kraukis, had filed the statement of consideration on the Bost–Stewart purchase. The statement reflects a cash and contract sale of defendant property from Bost to Stewart, which is fraudulent.

Deputy Marshal George Stumpf contacted the county and learned that Bost's property taxes were always paid in cash, although it quite unusual for taxpayers to do so. Taxes were assessed and billed in the name of Allen Stewart. The amount of taxes due in 1996 was $1,529.39.

After Bost's arrest, he continued to claim that he was Allen Stewart in an identity hearing held before Judge Downes in Casper, Wyoming. Bost argued that the arrest of Allen Stewart was not the arrest of Stewart Bost and that the government had not proven that Bost and Stewart were the same person. Judge Downes found probable cause to believe Bost was the person who had been indicted in 1989 and ordered that Bost be detained. Bost was transferred to the Southern District of Florida following that hearing, and ultimately pleaded guilty to two of the counts that had been charged in the indictment.

The government's complaint for forfeiture in rem was filed July 19, 1996, pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981(a)(1)(A) (civil forfeiture of property traceable to violations of money laundering statute) The government alleged that the facts established probable cause to believe that Bost used illegal drug proceeds to purchase the defendant property and that the transactions involved were designed to conceal the source, ownership, and control of Bost's criminal proceeds. The first claim for relief asserts that the defendant property is proceeds traceable to the illegal exchange or exchanges of cocaine, and therefore, subject to forfeiture under the provisions of 21 U.S.C. § 881(a)(6). The second claim for relief asserts the property is traceable to and involved in transactions and attempted transactions in violation

of 18 U.S.C. § 1956, i.e., monies used to purchase the defendant property were illegal drug proceeds, and the instruments used to convey the defendant property, documents filed with Park County, Wyoming, and the property taxes paid by Bost in cash were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the illegal drug proceeds.

## Standard of Review

### Fed.R.Civ.P. 12(b)

Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when plaintiff can prove no set of facts in support of the claims that would entitle plaintiff to relief. In making this determination, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to plaintiff. *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir. 1995), quoting *Sharp v. United Airlines, Inc.*, 967 F.2d 404, 406 (10th Cir.1992); *Grossman v. Novell, Inc.*, 120 F.3d 1112 (10th Cir.1997).

## Standard of Review

### Fed.R.Civ.P. 56

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Allen v. Muskogee Oklahoma*, 119 F.3d 837, 840–41 (10th Cir.1997). A disputed fact is material if it might affect the outcome of the suit under governing law, and the dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. The factual record and reasonable inferences therefrom are construed in the light most favorable to the nonmovant. *Id.*, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) and *Gullickson v. Southwest Airlines Pilots' Assoc.*, 87 F.3d 1176, 1183 (10th Cir.1996). The moving party need not affirmatively negate the nonmovant's claim in order to obtain summary judgment, but instead bears the initial burden of showing—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's

case. *Id.*, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

## Discussion

In his motion to dismiss, Bost's sole contention is that the government's complaint is barred by the five year statute of limitations for civil forfeitures set forth in 19 U.S.C. 1621. He argues that because the government moved more than five years after the offense was discovered, it is barred from proceeding with this civil forfeiture action.

The government responds, in its Combined Brief in Opposition to Claimant's Motion to Dismiss and in Support of its Cross–Motion for Summary Judgment and in its opposition to the motion to dismiss, that the statute of limitations has not run and that Bost's statute of limitations argument lacks merit on four grounds. It argues first that Bost is prohibited from raising a statute of limitations defense pursuant to 18 U.S.C. § 3290; second, Bost fails to establish an ownership interest in the defendant property, and therefore lacks standing; third, that the five year period of limitations was tolled in the United States' claim under 21 U.S.C. § 881(a)(6) during the time Bost concealed his criminal proceeds; and fourth, that the five-year period of limitations in the United States' claim under 18 U.S.C. § 981(a)(1)(A) began to run upon the discovery of the money laundering offenses in 1996.

The Court agrees with the government's contention that Bost's fugitive status prohibits him from asserting the statute of limitations defense raised in the motion to dismiss. Congress has provided, in explicit and unambiguous terms, in 18 U.S.C. § 3290 the following:

### § 3290. Fugitives from justice

No statute of limitations shall extend to any person fleeing from justice.

■ During the time that a person is a fugitive from justice any applicable statute of limitations is tolled. *United States v. Morgan*, 922 F.2d 1495 (10th Cir.1991). The Tenth Circuit has described the language of this statute as clear and has stated that its "terms are all inclusive." *Id.* at 1497. In the

*Morgan* case, the Tenth Circuit determined there were good reasons to conclude that Congress meant what it said:

First, a fugitive typically employs methods which make detection by any law enforcement authorities much more difficult. He can be expected to avoid detection not only of the specific law enforcement authorities seeking him, but also of law enforcement authorities in general since it is widely, and correctly, assumed that law enforcement authorities generally act in cooperation with each other. Congress could easily have believed that when an individual is fleeing from justice, the statute of limitations should be tolled for all subsequent federal crimes committed while he is a fugitive because his fugitive status will not only make it more difficult to apprehend him for the specific crime for which he is fleeing but it will also necessarily impede the investigation of any subsequent crime he may commit.

*Id.* In that case, the appellee's use of an alias, coupled with his flight across the country and change of residence, increased the difficulty of apprehending and determining the real identity of the fugitive.

Continuing, the Tenth Circuit stated that the second reason:

Congress may have intended such broad and inclusive tolling language was its desire not to reward or encourage fugitives. A statute of limitations is not a constitutional right. Congress may set reasonable conditions for when an accused can take advantage of it. We can readily appreciate that Congress may have enacted the tolling provision because of a belief that a person fleeing from justice should forfeit the privilege of a statute of limitations.

*Id.* Later in that opinion, it stated:

Indeed, it appears almost axiomatic that by employing means of concealment and disguise, a fugitive impedes all police investigation and delays justice because "[w]hen an accused knowingly secretes himself, even diligent investigators may be thwarted from uncovering facts essential to the prosecution." *Id.* (footnote omitted). We therefore believe that § 3290 should be interpreted as plainly as it was

written, and conclude that a fugitive of justice from one jurisdiction should be denied the statute of limitations for criminal prosecution in all federal jurisdictions during the course of his fugitive status.

*Id.* at 1498 [citation omitted]

The Tenth Circuit has continued to adhere to this rationale in subsequent cases. In *United States v. Various Tracts of Land in Muskogee and Cherokee Counties*, 98 F.3d 1350 (Table), Unpublished Disposition, Text at 1996 WL 563847 (10th Cir.1996), the appellate court considered, and rejected, a statute of limitations defense in a civil forfeiture action, stating:

The limitations period is five years from the date the alleged offense was discovered, but the five years does not include any period of concealment.

*Id.* at *2. *See also, cf., United States v. Timbers Preserve, Routt County, Colorado*, 999 F.2d 452 (10th Cir.1993) (discussing fugitive disentitlement doctrine in context of civil forfeiture proceeding).

 The Court finds that the claimant's fugitive status from 1989 until the time of his apprehension in 1996 precludes his assertion of a statute of limitations defense in this case. Additionally, the Court notes that there are no facts that suggest the government should have discovered the existence of the defendant property prior to the time that defendant Bost was arrested in 1996. Thus, the Court further finds that the government's action has been brought in a timely fashion and is not barred by the five year statute of limitations period provided for in 19 U.S.C. § 1621.

Because the foregoing determination is dispositive of Bost's assertions with regard to his purported statute of limitations defense, the Court need not visit further the remaining arguments advanced by the government with respect to that issue.

Thus, the Court must consider the substantive issues raised in the government's motion for summary judgment. In a civil forfeiture proceeding such as this one, the government and claimant carry separate burdens of proof. Title 19, U.S.C. § 1615 provides in relevant part:

In all suits or actions ... brought for forfeiture under the provisions of any law ... where the property is claimed by any person, the burden of proof shall lie upon such claimant, Provided, that probable cause shall be first shown for the institution of such suit or action, to be judged of by the Court[.]

19 U.S.C. § 1615.

■ In forfeiture proceedings, the government bears the initial burden to show probable cause for the institution of the forfeiture action. *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 876 (10th Cir.1992) (citations omitted). Once probable cause has been established, the claimant bears the burden of proving by a preponderance of the evidence that the requested forfeiture does not fall within the four corners of the statute. *Id.* (citation omitted). If no such rebuttal is made, a showing of probable cause alone will support a judgment of forfeiture. *Id. See also United States v. Premises Known as 318 South Third Street, Minneapolis, Minnesota, Hennepin County*, 988 F.2d 822, 824 (8th Cir.1993) (also noting the government carries the initial burden of establishing probable cause and that this burden of proof is greater than mere suspicion, but less than prima facie proof; stating that the claimant has the burden of proving by a preponderance of the evidence that the property is not subject to forfeiture, and if unrebutted, a showing of probable cause alone will support a forfeiture).

As noted above, Bost's sole defense is that this action is barred by the five year limitations period of 19 U.S.C. § 1621, an argument already rejected in the foregoing provisions of this order. There is nothing in his claim or moving papers that suggests he contests a finding probable cause to believe that the defendant property in this case constitutes drug proceeds or was involved in money laundering offenses. Having careful-ly reviewed the materials submitted in support of the government's motion and opposition to the claimant's motion, the Court finds that there is indeed probable cause to believe the property is subject to forfeiture and, as previously determined, rebutting Bost's statute of limitations defense. With an unrebutted showing of probable cause, summary judgment finding that the defendant property should be forfeited is appropriate.

■ The test for determining probable cause for forfeiture purposes is the same as applies in arrests, searches and seizures. *United States v. $149,442.43 in U.S. Currency*, 965 F.2d at 876. The government must "demonstrate a reasonable ground for belief of guilt supported by less than prima facie proof, but more than mere suspicion." *Id.* " 'Circumstantial evidence of drug transactions may support the establishment of probable cause.' " ... "However, the presence or absence of any single factor is not dispositive." *Id.* at 876–77 (citations and quotations omitted).

■ In the instant case, the Court concludes that the government has established probable cause to believe that the defendant property is proceeds traceable to the claimant's illegal exchanges of cocaine, pursuant to 21 U.S.C. § 881(a)(6).[1] The uncontroverted evidence before the Court in this case demonstrates that Bost received $1.3 million dollars for illegally smuggling cocaine into the United States between January 1986 and July 1986; that he bought the defendant property with cash on September 8, 1987; that he has no filed income tax returns for the past 20 years; and that he has engaged in activities designed to conceal the sources of his illegally gained money, as well as his own personal identity, by engaging in sham transactions. He paid property taxes for the defendant property in cash, using his alias Allen Stewart. Bost has no other apparent legitimate source of income sufficient to ac-

---

1. 21 U.S.C. § 881(a)(6) provides that property subject to forfeiture includes: "(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instru-ments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission estab-lished by that owner to have been committed or omitted without the knowledge or consent or that owner."

count for his large cash expenditures. Thus, the inference that the defendant property and the money used to pay taxes constitutes criminal proceeds is well supported. The evidence persuasively establishes probable cause that the defendant property is proceeds of illegal drug trafficking. *United States v. $149,442.43 in U.S. Currency,* 965 F.2d at 877. The Court finds that the defendant property is subject to forfeiture to the United States, pursuant to 21 U.S.C. § 881(a)(6).

The United States Supreme Court, in *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), discussed the civil forfeiture provisions of § 981(a)(1)(A), §§ 881(a)(6) and (a)(7), and described the purposes of civil forfeiture. It noted that civil forfeiture of property serves several purposes and that it encourages owners of property to take care in managing their property to ensure that they will not permit property to be used for illegal purposes. *Id.* at ——, 116 S.Ct. at 2148, citing *Bennis v. Michigan,* —— U.S. ——, ——, 116 S.Ct. 994, 1000, 134 L.Ed.2d 68 (1996) (in which it is stated that "Forfeiture of property prevents illegal uses by imposing an economic penalty, thereby rendering illegal behavior unprofitable.") It also stated that in certain circumstances, forfeiture may abate a nuisance. *Id.* It may prevent the further illicit use of property. The Supreme Court stated further, discussing forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6):

> Section 981(a) (1)(A) provides for the forfeiture of "any property" involved in illegal money-laundering transactions. Section 881(a)(6) provides for the forfeiture of "[a]ll ... things of value furnished or intended to be furnished by any person in exchange for" illegal drugs; "all proceeds traceable to such an exchange"; and "all moneys, negotiable instruments, and securities used or intended to be used to facilitate" a federal drug felony. The same remedial purposes served by § 881(a)(7) are served by § 881(a)(6) and § 981(a)(1)(A). Only one point merits separate discussion. To the extent that § 881(a)(6) applies to "proceeds" of illegal drug activity, it serves the additional non-

punitive goal of ensuring that persons do not profit from their illegal acts.

*Id.* at —— – ——, 116 S.Ct. at 2148–2149. It acknowledged that both § 881(a) and § 981(a) serve the purpose of deterrence, which is a purpose distinct from any punitive purpose. *Id.*

The Tenth Circuit has employed the lessons of *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), in *United States v. Various Tracts of Land in Muskogee and Cherokee Counties,* 98 F.3d 1350 (Table), Unpublished Disposition, Text at 1996 WL 563847 (10th Cir.1996). In that case, the Tenth Circuit affirmed five decrees of forfeiture of various items of property, including several parcels of real property, pursuant to 21 U.S.C. § 881(a)(6), for proceeds. There the circuit court determined that the affidavits it reviewed which were offered in support of the forfeiture complaints and which demonstrated the claimant's involvement in large drug sales and property purchases with cash from unexplained legitimate sources, provided sufficient probable cause to seize the property. Furthermore, the circuit court rejected the argument advanced by the claimant distinguishing between new and old drug proceeds made by the claimant in an effort to assert a statute of limitations defense. The circuit court determined the government was clearly entitled to forfeiture of the five properties. Drug proceeds had been used to purchase the defendant real properties. The circuit court upheld the summary judgment against the claimant on the basis that the properties were forfeitable as proceeds of drug transactions under § 881(a)(6), and quoted *Ursery,* —— U.S. at —— – ——, 116 S.Ct. at 2148–49 in its opinion: "To the extent that § 881(a)(6) applies to 'proceeds' of illegal drug activity, it serves the additional nonpunitive goal of ensuring that persons do not profit from their illegal acts." *United States v. Various Tracts of Land in Muskogee and Cherokee Counties,* 1996 WL 563847, at *3.

In view of the foregoing disposition, the Court has not based its decision on the government's alternative contention that the defendant property is subject to forfeiture

pursuant to 18 U.S.C. § 981(a)(1)(A).[2] The government's argument with respect to § 981(a)(1)(A) seeks findings from this Court that the defendant real property is traceable to and was involved in transactions and attempted transactions in violation of 18 U.S.C. § 1956, that is, the monies used to purchase the defendant property were illegal drug proceeds, and the instruments used to convey the defendant property, including documents filed with Park County, Wyoming, and the property taxes paid by Bost were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the illegal drug proceeds. Although the Court has not elected to base its decision on the provisions of § 981(a)(1)(A), the Court believes a decision based upon that section would be equally well supported in the record before this Court and would likewise support a determination that the defendant property is subject to forfeiture under § 981(a)(1)(A). The Court also believes such a determination would also facilitate the purposes of *in rem* civil forfeiture proceedings that have been discussed in the preceding portions of this Order.

### Conclusion

The Court concludes that probable cause exists and is sufficient to support of judgment of forfeiture in favor of the United States with respect to the defendant property, in the absence of a valid defense by the claimant to forfeiture proved by a preponderance of the evidence. The Court shall order, adjudge and decree that the defendant property be forfeited to the United States of America and disposed of according to law. Accordingly, and for the foregoing reasons, it is therefore

**ORDERED** that the claimant's Motion to Dismiss shall be, and is, **DENIED.** It is further

**ORDERED** that the Cross–Motion for Summary Judgment filed by the United States shall be, and is, **GRANTED.** It is further

**2.** This section, 18 U.S.C. § 981(a)(1)(A), provides in part that certain property is subject to civil forfeiture to the United States, including: "Any property, real or personal, involved in a transac-

**ORDERED, ADJUDGED, AND DE-CREED** that the defendant property, described as:

657 Acres of Land, More or Less, In Park County, Wyoming, in Township 56 North of Range 103 West of the 6th P.M.; Section 1: SW¼ SE¼; Section 12: Lots 2, 3, 5, 8, 9, and 10; Section 13: Lot 3; All of Tracts 46, 47, 54; Tracts 55–C, 55–D, and 55–E, Together with All Improvements Thereon and Appurtenances and Hereditaments Thereunto or In Anywise Appertaining, Excepting only Those Rights and Interests of Record, shall be forfeited to the United States and disposed of according to law.

tion or attempted transaction in violation of . . . section 1956 of this title, or any property traceable to such property[.]"