## STREEP *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 623.   Argued October 30, 31, 1895. — Decided December 2, 1895.

To support an indictment on section 5480 of the Revised Statutes, as amended
by the act of March 2, 1889, c. 393, for devising a scheme to sell counter-
feit obligations of the United States, by means of communication through
the post office, it is unnecessary to prove a scheme to defraud.

In order to come within the exception of "fleeing from justice," in section
1045 of the Revised Statutes, concerning the time after the commission
of an offence within which an indictment must be found, it is sufficient
that there is a flight with the intention of avoiding being prosecuted,
whether a prosecution has or has not been begun.

In order to constitute "fleeing from justice," within the meaning of section
1045 of the Revised Statutes, it is not necessary that there should be an
intent to avoid the justice of the United States ; but it is sufficient that
there is an intent to avoid the justice of the State having jurisdiction
over the same territory and the same act.

THIS was an indictment in the Circuit Court of the United
States for the Southern District of New York, on section 5480
of the Revised Statutes, as amended by the act of March 2,
1880, c. 393, and copied in the margin,[1] for devising a scheme
to sell counterfeit obligations and securities of the United
States, by means of circulars through the post office. The
indictment was found October 10, 1892, and contained two

_____

[1] If any person having devised or intended to devise any scheme or arti-·
fice to defraud, or to sell, dispose of, loan, exchange, alter, give away, or
distribute, supply or furnish, or procure for unlawful use, any counter-
feit or spurious coin, bank notes, paper money, or any obligation or secu-
rity of the United States or of any State, Territory, municipality, com-
pany, corporation or person, or anything representing to be, or intimated
or held out to be, such counterfeit or spurious articles, or any scheme
or artifice to obtain money by or through correspondence, by what is com-
monly called the "sawdust swindle," or "counterfeit money fraud," or by
dealing or pretending to deal in what is commonly called "green articles,"
"green coin," "bills," "paper goods," "spurious Treasury notes," "United
States goods," "green cigars," or any other names or terms intended to be
understood as relating to such counterfeit or spurious articles, to be effected

counts, one charging the offence to have been committed on May 13, and the other on May 20, 1889.

By sections 1043 and 1044 of the Revised Statutes, as amended by the act of April 13, 1876, c. 56, "no person shall be prosecuted, tried or punished," (except for murder, or under the revenue laws or the slave trade laws of the United States,) "unless the indictment is found, or the information is instituted, within three years next after such offence shall have been committed." 19 Stat. 32. But, by section 1045, "nothing in the two preceding sections shall extend to any person fleeing from justice."

At the trial of this indictment, the United States introduced evidence tending to prove the commission of the offence at the times alleged in the indictment; and also testimony that the defendant was indicted June 20, 1889, for the same transaction, in a court of the State of New York, under the penal code of the State, and was arrested by the police and gave bail upon that indictment; that on October 10, 1889, his case was called in that court, and his bail forfeited by order of the court; that the officers afterwards made unsuccessful attempts to find him; that in August, 1890, being in New York, he stated to Anthony Comstock (who was called as a witness for the government) that he went to Europe in the fall of 1889, because his counsel advised him to do so, and told him to go abroad so that they could not call him as a witness against one Bechtold, by whom the bail had been put up; that

---

by either opening or intending to open correspondence or communication with any person, whether resident within or outside of the United States, by means of the Post Office Establishment of the United States, or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice, or attempting so to do, place or cause to be placed any letter, packet, writing, circular, pamphlet or advertisement, in any post office, branch post office, or street or hotel letter-box of the United States, to be sent or delivered by the said post office establishment, or shall take or receive any such therefrom, such person so misusing the post office establishment shall, upon conviction, be punishable by a fine of not more than five hundred dollars and by imprisonment for not more than eighteen months, or by both such punishments, at the discretion of the court. 25 Stat. 873.

in October, 1890, he made an affidavit and testified in a prosecution in behalf of the United States against Bechtold; and that the first charge made against him, for a violation of the laws of the United States, was a complaint, charging the same offence as in this indictment, and upon which he was arrested October 2, 1891.

The defendant offered no evidence; and, at the close of the evidence for the government, moved the court to direct an acquittal, because the indictment was found more than three years after the offences alleged and given in evidence, and because the words "fleeing from justice," in section 1045 of the Revised Statutes, meant a fleeing from the justice of the United States, and not from the justice of any State. The motion was denied, and the defendant excepted.

The court instructed the jury that, if they found that the defendant was fleeing from justice between the times of the commission of the offences and of the finding of the indictment, they might find him guilty, notwithstanding the indictment was found more than three years after the commission of the offences. The further instructions of the court to the jury, together with the requests and exceptions of Mr. Hess, the defendant's counsel, and a request of Mr. Mott, the attorney for the United States, were stated in the bill of exceptions as follows:

"The Court: 'The evidence as to his fleeing from justice, as I understand it, was that there was a prosecution against the accused in the state courts; that he gave bail to answer to the charge; that when the time for trial came he did not appear and his bail was forfeited, and afterwards, when he had returned, he told the witness Comstock that the reason why he was away was that he had gone away because of the prosecution, under the advice of his counsel, and that his bail had been paid by somebody else. If you find that true, I charge you that he was fleeing from justice, in the meaning of the statute of the United States, during the period of his absence, notwithstanding the fact that that was a prosecution in the courts of the State, and that there was then no prosecution of him pending in any court of the United States.' Mr. Hess: 'And to that I except.'

"The Court: 'For the purpose of this trial, I charge that, if the jury is satisfied of the main charge in this indictment, and are likewise satisfied that during the three years mentioned he was fleeing from justice, having gone from the country to Europe to avoid the prosecution in the state courts, then you can convict him, notwithstanding the fact that it is conceded that the indictment is found more than three years after the offence.' Mr. Hess: 'To the latter part of your honor's charge I except. I ask your honor to charge the jury that the forfeiture of the bail by the state courts is not presumptive evidence of a fleeing from justice.' The Court: 'It is not conclusive evidence, but it is a circumstance which the. jury may consider.'

"Mr. Hess: 'I ask your honor to charge the jury that, before they can convict this defendant under the indictment, they must be satisfied from the evidence that there was a scheme to defraud.' The Court: 'No; the statute says a scheme to defraud, and likewise a scheme to sell counterfeit money. This indictment charges a scheme to sell counterfeit money. It is a scheme to sell counterfeit money, that the jury must find to have been devised by the accused.' Mr. Hess: 'They must be satisfied, before they convict, from the evidence in the case, that there was a scheme on the part of this defendant to sell counterfeit money.' The Court: 'I charge that.'

"Mr. Hess: 'I also ask your honor to charge the jury that they cannot infer a scheme to defraud from the circulars themselves. They must be satisfied from the evidence that there was such a scheme.' The Court: 'I do not accede to the request.' Exception by defendant.

"Mr. Hess: 'I also ask the court to charge the jury that it must appear from the evidence that the defendant fled from justice of the United States, and not from the justice of the State.' The Court: 'That is declined.' Exception by defendant.

"Mr. Mott: 'I ask your honor to charge that if the jury find that the defendant was absent from the country, as stated, for six months at any time between the commission of this act

and the time of the filing of this indictment, then they can convict, notwithstanding the lapse of three years.' The Court: 'I will give that charge.' Exception by defendant."

The court also, at the request of the defendant's counsel, instructed the jury that the failure of the defendant to testify should not raise a presumption against him; and that if they had a reasonable doubt they must acquit the defendant.

The jury returned a verdict of guilty; the court sentenced the defendant to be imprisoned in a penitentiary for eighteen months; and he sued out this writ of error.

*Mr. Charles C. Lancaster,* (with whom was *Mr. Frank W. Angel* on the brief,) for plaintiff in error.

*Mr. Assistant Attorney General Dickinson* for defendants in error.

Mr. Justice Gray, after stating the case, delivered the opinion of the court.

Only two of the questions argued in this court are presented by the exceptions taken at the trial.

One subject of exception was the refusal of the court to instruct the jury, as requested by the defendant, that they could not infer a scheme to defraud from the circulars themselves, but must be satisfied from the evidence that there was such a scheme. That instruction was rightly refused as immaterial. The court had already instructed the jury, without exception by the defendant, that they need not, under this indictment, be satisfied that there was a scheme to defraud; that the statute spoke of a scheme to defraud, and also of a scheme to sell counterfeit money; that the indictment charged a scheme to sell counterfeit money, and it was a scheme to sell counterfeit money that the jury must find to have been devised by the accused. The statute, in very words as well as in manifest intent, applies to any person who devises either a scheme to defraud, or a scheme to sell counterfeit money or counterfeit obligations of the United States, provided the scheme is intended to be effected, and is effected, by com-

munications through the post office. This indictment charged, not a scheme to defraud, but a scheme to sell counterfeit obligations of the United States; and, therefore, no proof of a scheme to defraud was necessary to support it.

Upon the question whether there had been such a " fleeing from justice," by the defendant, as to take the case out of the statute of limitations, the only point taken at the trial was that there must have been a fleeing from the justice of the United States, and not from the justice of any State. No exception was taken to the sufficiency of the whole evidence to prove that there had been a fleeing from the justice of the State of New York, or to the statement of that evidence in the instructions of the court to the jury.

By section 1045 of the Revised Statutes, it is provided that " nothing in the two preceding sections" (one of which, as amended in 1876, requires the indictment, in such a case as this, to be found within three years after the commission of the offence) " shall extend to any person fleeing from justice."

The statute, while laying down the general rule that charges of crime shall be formally presented within a limited time after the act complained of, expressly excepts from that rule the case of " any person fleeing from justice." It is unnecessary, for the purposes of the present case, to undertake to give an exhaustive definition of these words; for it is quite clear that any person who takes himself out of the jurisdiction, with the intention of avoiding being brought to justice for a particular offence, can have no benefit of the limitation, at least when prosecuted for that offence in a court of the United States.

In order to constitute a fleeing from justice, it is not necessary that the course of justice should have been put in operation by the presentment of an indictment by a grand jury, or by the filing of an information by the attorney for the government, or by the making of a complaint before a magistrate. It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not been actually begun. Chief Justice Ellsworth so held.

*Williams's case,* cited in *United States* v. *Smith,* (1809) 4 Day, 121, 125. And there can be no doubt that, in this respect, section 1045 of the Revised Statutes must receive the same construction that has been given to section 5278 by this court, saying: "To be a fugitive from justice, in the sense of the act of Congress regulating the subject under consideration, it is not necessary that the party charged should have left the State in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a State committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offence, he has left its jurisdiction and is found within the territory of another." *Roberts* v. *Reilly,* 116 U. S. 80, 97.

Nor is it necessary, in order to satisfy the terms of the statute now before us, that the fugitive should have the intention of fleeing from justice as administered by any particular court, or system of courts, having criminal jurisdiction over the territory where the act supposed to have been criminal was committed.

The statute speaks generally of "fleeing from justice," without restriction either to the justice of the State, or to the justice of the United States. A person fleeing from the justice of his country is not supposed to have in mind the object of avoiding the process of a particular court, or the question whether he is amenable to the justice of the nation or of the State, or of both. Proof of a specific intent to avoid either could seldom be had; and to make it an essential requisite would often defeat the whole object of the provision in question.

In the Constitution, laws and treaties of the United States, the words "fleeing from justice," or "fugitive from justice," have not been used as of themselves implying a flight from the justice of the nation only.

Section 1045 of the Revised Statutes is a reënactment of the corresponding proviso in the first Crimes Act of the United States: "Provided, that nothing herein contained

shall extend to any person or persons fleeing from justice."
Act of April 30, 1790, c. 9, § 32; 1 Stat. 119.

At the time of the passage of that act, the only use, in the
Constitution or statutes of the United. States, of the words
" flee from justice," was in article 4, section 2, of the Constitu-
tion, concerning persons charged with crime in one State and
found in another State of the Union. And the earliest act
passed by Congress in execution of that provision of the Con-
stitution used, both in the title and in the enacting clause, the
general words " fugitive from justice," as applicable to that
class of cases. The whole title of that act, so far as it related
to this subject, was " An act respecting fugitives from justice."
Act of February 12, 1793, c. 7; 1 Stat. 302. And that part
of the act is reënacted in section 5278 of the Revised Statutes.

The treaties made by the United States with foreign coun-
tries, for the extradition of persons accused of crime, make
no distinction between crimes against one of the States of the
Union and crimes against the United States. By successive
treaties between the United States and Great Britain, for
instance, each nation engages to " deliver up to justice all
persons " who, being charged with certain crimes committed
within the jurisdiction of either nation, seek an asylum in the
country of the other. Treaties of 1794, art. 27; 1842, art. 10;
8 Stat. 129, 576. There can be no doubt that these treaties
apply to all offences of the kinds specified, committed within
the territorial jurisdiction of the United States, even if cogniz-
able only in the courts of the several States. *United States* v.
*Rauscher*, 119 U. S. 407, 430.

From these considerations, our conclusion is that, in order
to constitute " fleeing from justice," within the meaning of
section 1045 of the Revised Statutes, it is not necessary that
there should be an intent to avoid the justice of the United
States; but it is sufficient that there is an intent to avoid the
justice of the State having criminal jurisdiction over the same
territory and the same act.

The only case cited at the bar which restricts the effect of
this section to persons fleeing from the justice of the United
States, is *United States* v. *O'Brian*, 3 Dillon, 381, which ap-

pears to us to have proceeded upon too narrow a construction of the section, inconsistent alike with its words and with its purpose.

*Judgment affirmed.*