**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Warren Keith PRYOR, Defendant—**
**Appellant.**

No. 99–2344.

United States Court of Appeals,
Sixth Circuit.

Aug. 29, 2001.

Before JONES and DAUGHTREY, Circuit Judges, ECONOMUS, District Judge.*

PER CURIAM.

Defendant–Appellant Warren Keith Pryor appeals the district court's denial of his motion to dismiss his indictment based on the expiration of the statute of limitations. *See* 18 U.S.C. § 3282 (2001). Because the government did not prove by a preponderance of the evidence that Pryor concealed himself with the intent to avoid prosecution, the statute of limitations was not tolled and the indictment should have been dismissed.

I.

In July of 1993, a joint federal and state law enforcement task force investigating drug distribution activities by motorcycle gangs received information from a confidential informant that led them to the house where Mr. Pryor resided. When the police arrived at the residence, Mr. Scott, the homeowner, gave them permission to search the house and informed the police that Pryor had moved out shortly before they arrived.

The police then contacted a nearby storage rental facility and learned that Pryor had rented a unit that same day. Pursuant to a warrant, police searched the unit and discovered distribution quantities of cocaine and marijuana, narcotic distribution supplies, eight firearms, including a Tec–9 semi-automatic pistol with its serial number removed, and personal goods including a Rolex watch and video cameras. The police also located a lease for the unit in Pryor's name. Pryor never returned to the storage unit. State officers tried but failed to find him.

After one year, state authorities enlisted the help of the U.S. Marshal Service and Pryor was declared a fugitive. In addition, in March 1994, a federal arrest warrant was issued. On June 15, 1995, the U.S. Marshals ran Pryor's picture in the *Detroit Free Press* under the caption, "Michigan's most wanted," and in early 1996 the Drug Enforcement Agency listed Pryor as a fugitive on its web site.

In early 1998, the Marshals discovered that Pryor had obtained a driver's license in Alabama. The Marshals contacted local authorities, and on January 29, 1998, a local newspaper in Alabama ran an article stating that the United States Marshal Service was looking for Pryor. The article, however, incorrectly stated that he was wanted on charges for aggravated assault—a state charge for which he had

---

* The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

already served time. The government notes that local police provided the information to the paper without consulting the Marshals, who did not want Pryor to know that they were looking for him.

In March of 1998, federal authorities finally tracked Pryor down in Tampa, Florida, after learning that he had been withdrawing money from an ATM.

On May 11, 1999, a grand jury indicted Pryor for possession of controlled substances with the intent to distribute pursuant to 21 U.S.C. § 841(a)(1). On June 15, 1999, Pryor filed a motion to dismiss the indictment as time-barred under 18 U.S.C. § 3282. The court held a hearing at which the parties appear to have stipulated to most of the facts, and the government conceded that it was "relying on an inference that the defendant was aware he was a defendant based on the seizure. I do not have any witnesses, live or otherwise, that could come in and say the defendant ... had personal knowledge or was actually put on notice of the warrant." (J.A. at 43.) The district court denied the motion on the basis that the statute of limitations had been tolled because Pryor was a fugitive from justice under 18 U.S.C. § 3290.

Pryor plead guilty and reserved the right to appeal the denial of the motion to dismiss. Pryor appealed immediately after he was sentenced.

## II.

We review findings of fact by the district court for clear error. *See United States v. Greever*, 134 F.3d 777, 779 (6th Cir.1998). However, the question of whether the defendant was fleeing justice within the meaning of 18 U.S.C. § 3290 is reviewed *de novo. See United States v. Fowlie*, 24 F.3d 1070, 1072 (9th Cir.1994).

The statute of limitations for noncapital criminal offenses, including the one at bar, is five years. *See* 18 U.S.C. § 3282. However, 18 U.S.C. § 3290 provides that, "[n]o statute of limitations shall extend to any person fleeing from justice." Therefore, when a defendant flees from justice the statute of limitations is tolled.

One purpose of the statute of limitations is to ensure that "one accused of a crime has an adequate opportunity to gather exculpatory evidence. The theory is that the best opportunity to do so occurs while the tracks are fresh. One who has notice but fails to come forward to defend cannot be heard to complaint that the tracks have faded." *Fowlie*, 24 F.3d at 1073 (Farris, J., concurring). Although the statute of limitations does not apply when an accused has fled justice, because the failure to prosecute is a result of his own conduct, "[t]he accused should not be held responsible ... for unintentional and innocent delays, such, for example, as one caused by an open move to a new residence where the accused is readily accessible to careful law enforcement officers." *United States v. Wazney*, 529 F.2d 1287, 1289 (9th Cir. 1976).

In *Streep v. United States*, the Supreme Court explained that:

In order to constitute a fleeing from justice, it is not necessary that the course of justice should have been put in operation by the presentment of an indictment by a grand jury, or by the filing of an information by the attorney for the government, or by the making of a complaint before a magistrate. It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not been actually begun.

160 U.S. 128, 133, 16 S.Ct. 244, 40 L.Ed.

365 (1895).[1] Therefore, whether or not a warrant has been issued at the time of a defendant's flight is not determinative. Rather, the focus is on the defendant's intent to avoid prosecution.

In *Greever*, the Sixth Circuit explicitly rejected the view held by some courts that the "mere absence from the jurisdiction where the crime was committed [is] enough to toll the state of limitations and that the government need not prove intent to avoid prosecution." 134 F.3d at 780. In fact, the Court held that absence from the jurisdiction is not required. *Id.* Rather, we said that in order to show that the statute of limitations was tolled, "the government must prove that the defendant *concealed himself with the intent to avoid prosecution.*" *Id.* (emphasis added); *see also* Kurtis A. Kemper, *What Constitutes "Fleeing From Justice" Within Meaning of 18 U.S.C.A. § 3290 which Provides that No Statute of Limitations Shall Extend to Persons Fleeing From Justice*, 148 A.L.R.Fed. 573, 591 (2000). ("[C]ourts have generally recognized that in order for a person to be 'fleeing from justice' within the meaning of § 3290, there must be evidence of an intent to avoid arrest or prosecution."). The defendant's intent to avoid prosecution, the Court held, "can be inferred from the defendant's knowledge that he was wanted and his subsequent failure to submit to an arrest." *Id.* at 780. The defendant in *Greever* admitted that he had known that there was a warrant for his arrest and that "he had been playing a cat-and-mouse game with the agents." *Id.* at 779. Thus, we affirmed the district court's denial of the defendant's motion to dismiss. *Id.* at 781.

In this case, the government attempts to make its case that Pryor was a fugitive from justice by the same technique as in *Greever*-by inferring the defendant's intent to conceal himself based on the defendant's knowledge that he was wanted by law enforcement authorities. Unfortunately for the government, however, Pryor did not admit that he was aware that he was wanted. There was no other direct evidence that he knew that authorities were trying to locate him either. In fact, the attorney for the government candidly admitted before the district court that he was "relying on an inference that the defendant was aware he was a defendant based on the seizure [of evidence]. I do not have any witnesses, live or otherwise, that could come in and say the defendant … had personal knowledge or was actually put on notice of the warrant." (J.A. at 43.) In other words, the governments asks us to *infer* that Pryor was aware that he was wanted in order that we may then *infer* that he was concealing himself with the intent to avoid prosecution.

In this case, pure speculation is necessary in order to infer from the evidence presented that the defendant was aware that he was wanted by law enforcement authorities. One could speculate that the defendant moved out of his residence and did not return to his storage unit because he was concealing himself in order to avoid prosecution. On the other hand, evidence demonstrates that Pryor continued to use his own name during the time in which he is alleged to have been concealing his whereabouts. Moreover, it is simply not uncommon at this day and age for people to move a couple of times in five or so

---

1. In *Streep v. United States*, 160 U.S. 128, 133, 16 S.Ct. 244, 40 L.Ed. 365 (1895), the Supreme Court was discussing Rev. Stat. § 1045, a predecessor to 18 U.S.C. § 3290, but its interpretation of the phrase "fleeing from justice" has been applied by many courts when considering 18 U.S.C. § 3290.

*See* Kurtis A. Kemper, *What Constitutes "Fleeing From Justice" Within Meaning of 18 U.S.C.A. § 3290 which Provides that No Statute of Limitations Shall Extend to Persons Fleeing From Justice*, 148 A.L.R.Fed. 573, 591 (2000).

years. In short, the government has failed to prove by a preponderance of the evidence that the defendant concealed himself with the intent to avoid prosecution.

We recognize that a defendant need not have knowledge that prosecution against him has begun, *see Streep,* 160 U.S. at 133; nonetheless, in the absence of direct evidence that the defendant was concealing himself in order to avoid prosecution, the defendant must have some knowledge that he is wanted, or at least that law enforcement authorities' discovery of his illegal conduct is imminent. Where such knowledge is lacking there is no logical basis on which to infer that the defendant had developed an intent to avoid prosecution.

We do not hold here that the government may never make out a case for tolling of the statute of limitations by putting forth circumstantial or indirect evidence of the defendant's knowledge or awareness. We merely hold that the evidence in this case was insufficient to support the ultimate conclusion.

Therefore, we REVERSE and REMAND for further proceedings consistent with this opinion.