### In the Matter of EXTRADITION OF Carlos Mario RAMOS HERRERA a.k.a. Carlos Ramos.

#### No. W02–114M.

United States District Court,
W.D. Texas,
Waco Division.

March 10, 2003.

---

Fabian Guerrero, Attorney at Law, Edinburg, TX, for Carlos Mario Ramos Herrera.

Gregory S. Gloff, Assistant United States Attorney, Waco, TX, for U.S. Attorneys.

### MEMORANDUM OPINION, CERTIFICATION OF EXTRADITABILITY AND ORDER OF COMMITMENT

MANSKE, United States Magistrate Judge.

On February 18, 2003, the matter regarding the extradition of Carlos Mario

Ramos Herrera (a.k.a. Carlos Ramos)(hereinafter "Ramos") came before the undersigned pursuant to 18 U.S.C. § 3184. After considering the evidence received at the hearing, as well as written arguments and authorities presented by the parties after the hearing, the undersigned finds that a certification of extradition should be granted for the following reasons:

## A. Charges by the Mexican Government

The Sixth Circuit Judge in the State of Chihuahua, Mexico issued an arrest warrant on February 12, 1992 citing Ramos as the probable perpetrator in the homicide (*homicidio*) of Fernando Torres Ortega and the bodily injury (*lesiones*) of Javier Chavarria Toreres. Upon an *amparo* petition[1] made by Ramos, a Federal Judge in Mexico issued an order to the Chihuahua District Court on April 23, 2002, declaring the arrest warrant null and void for failure to specify the evidence which satisfied the elements of *corpus delicti*. Government Exhibit 2, tab 16. On June 5, 2002, the Sixth Circuit Judge in the State of Chihuahua, Mexico issued a new arrest warrant with the requisite findings to correct the deficiencies in the original warrant and to satisfy the concerns presented by the Federal Judge following the *amparo* proceeding. *Id.* In addition, the judge concluded that the applicable statute of limitations had expired for the alleged "attempt of homicide"[2] to Javier Chavarria Toreres and the warrant was issued solely for the alleged homicide of Fernando Torres Ortega.

## B. Extradition Request by a Foreign Country

■ Foreign governments requesting the extradition of a fugitive must file a complaint under oath. Upon such a complaint, a United States justice, judge or authorized magistrate judge may issue an arrest warrant for the requested fugitive. 18 U.S.C. § 3184. The authority which files the complaint shall not be held to scrutiny by the magistrate judge to whom it is presented. *Caputo v. Kelly*, 92 F.2d 603 (2nd Cir.1937) *cert. denied* 303 U.S. 635, 58 S.Ct. 521, 82 L.Ed. 1096 (1938) (foreign governments may authorize any person to make an oath to complaint on its behalf), *Petrushansky v. Marasco*, 325 F.2d 562 (2nd Cir.1963) *cert. denied* 376 U.S. 952, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964) (extradition warrant was not invalid because complaint upon which it was based was made by assistant United States attorney who had no personal knowledge of facts or because it failed to specify details of crime).

■ The complaint must provide sufficient information as to inform the fugitive of the charges against him. "While it is not necessary to charge the offense with the particularity of an indictment, it should be sufficiently explicit to inform the accused of the nature of the charge." *In re Wise*, 168 F.Supp. 366, 369 (S.D.Tex.1957).

1. *Amparo* has no proper English translation and the proceeding is unique to Mexican legal institutions. The proceeding is similar to American *habeas corpus* proceedings. A Mexican national or foreigner may assert the *amparo* by alleging a constitutional violation by a Mexican authority. When *amparo* is granted, it protects and shelters the individual against the illegal infringement. In Spanish, "amparar" means to protect or to shelter. Jorge A. Vargas, *Mexico's Legal Revolution: An Appraisal of Its Recent Constitutional Changes 1988–1995*, 25 Ga. J. Int'l & Comp. L. 497, n. 178, Summer 1996.

2. Although the judge determined the limitations period has run for the crime of attempted homicide, the original arrest warrant listed bodily injury or *lesiones* as the alleged crime. The discrepancy is not material as the limitations period had also expired for the crime of bodily injury. *Id.* at tab 17.

The information contained in the complaint usually includes:

1. The name of the accused;

2. The name of the treaty enforced;

3. The allegation that an extraditable offense under the treaty was committed;

4. The allegation that the offense constitutes a crime under U.S. federal law or the laws of the state wherein the District Court is located;

5. Where applicable, the non-applicability of a treaty defense;

6. A summary of the factual circumstances of the alleged offense; and

7. A showing that "probable cause" exists that the accused is the person charged or convicted, and has committed the crime charged or for which he was convicted.

■ M. Bassiouni, *International Extradition: United States Law and Practice*, Ch. IX § 2.4 (3d ed.1996). The information in support of the extradition request will be certified and admitted properly under 18 U.S.C. § 3190 if certified by the U.S. counsel in the requesting country and subsequently delivered through diplomatic channels to the United States. Upon requisite certification, the documents are admissible for the purposes of an extradition hearing. *Collins v. Loisel*, 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed. 956 (1922).

### C. Mexico's Extradition Request

■ The Mexican Government made a request to Secretary of State Colin Powell for the provisional arrest of Ramos for extradition purposes on June 12, 2002. Government Exhibit 1. Pursuant to the request and the Extradition Treaty, the undersigned issued an arrest warrant for Ramos which was filed on September 17, 2002. Upon the execution of a warrant, the fugitive may be presented to any justice, judge or magistrate judge authorized to conduct an extradition hearing. *Jimenez v. Aristeguieta*, 311 F.2d 547, 553 (5th Cir.1962) *cert. denied* 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963). Authorities arrested Ramos on September 18, 2002, and he was presented to United States Magistrate Judge Billy W. Boone in the United States District Court for the Northern District of Texas, Abilene Division, on September 19, 2002. Government Exhibit 3. At the initial appearance, Ramos waived his right to an identity hearing and chose to retain his own counsel. *Id.* The judge ordered Ramos to be detained and removed to the United States District Court for the Western District of Texas, Waco Division. *Id.* A certified copy of the record was transferred to the present court pursuant to Rule 40 of the Criminal Rules of Procedure. The Waco Division set an extradition hearing for December 16, 2002.

On November 8, 2002, John S. Dickenson, the Charge D'Affaires ad interim for the United States, certified the "Documentary Evidence Accompanying Requisitions in the United States" for the extradition of Ramos. Government Exhibit 2. At the scheduled hearing on December 16, 2002, Ramos's counsel requested and the undersigned granted a motion for continuance. On February 18, 2003, the undersigned held an extradition hearing and heard evidence presented by both parties. At the hearing, the Court requested the parties to submit written closing arguments addressing, among other things: 1) whether the Court could consider the testimony of Ramos; 2) whether there is probable cause to believe the Respondent committed the crime of murder in Mexico; and, 3) whether the Respondent is a fugitive from justice. On February 24, 2003, the Government submitted its Closing Argument with Citations and its Supplemental Brief with Proposed Findings of Fact and Conclu-

sions of law. On March 5, 2003, Ramos filed his Response to the Government's Supplemental Brief.

### D. International Extradition Hearings

The duty of the United States to deliver a fugitive to a foreign country lies only in the existence of a treaty between the United States and the requesting country. 18 U.S.C. § 3181(a); *Allen v. Schultz (In re United States)*, 713 F.2d 105 (5th Cir.1983) citing *Factor v. Laubenheimer*, 290 U.S. 276, 287, 54 S.Ct. 191, 78 L.Ed. 315 (1933); *Valentine v. U.S.*, 299 U.S. 5, 8–9, 57 S.Ct. 100, 81 L.Ed. 5 (1936) ("albeit a national power, it is not confided to the executive in the absence of a treaty or legislative provision.").

■ Even so, "[t]he ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs." *Escobedo v. U.S.*, 623 F.2d 1098 (5th Cir.1980). The executive branch, through the Secretary of State, is the final arbitrator of whether an individual will be detained in the United States and delivered to the requesting foreign country. 18 U.S.C. § 3181(a).

At the hearing, the presiding judge is not required to make a determination of guilt or innocence. The focus of the extradition hearing is to address the following issues: 1) personal and subject matter jurisdiction of the court, 2) existence of a controlling treaty, 3) confirmation of the fugitive's identity as the person sought by the requesting state, 4) verifiable charges against the fugitive, 5) commission of an extraditable crime, 6) satisfaction of the dual criminality requirement, 7) determination of probable cause that the fugitive committed the alleged crime, 8) presentation of applicable treaty defenses that would bar extradition of the fugitive. Bruce Zagarais and Julia Peralta, *Mexico– United States Extradition and Alternatives: From Fugitive Slaves to Drug Traf-*

*fickers—150 Years and Beyond the Rio Grande's Winding Courses*, 12 AM. U.J. INT'L L. & POL'Y 519, 570—575 (1997).

■ If the judicial officer, after taking into account the evidence presented at the extradition hearing, finds evidence sufficient to sustain charges under the treaty he then certifies to the Secretary of State that the fugitive may be detained and surrendered to the requesting country. *Ntakirutimana v. Reno*, 184 F.3d 419, 422 (5th Cir.1999) *cert. denied* 528 U.S. 1135, 120 S.Ct. 977, 145 L.Ed.2d 929 (2000). "The duty to certify falls not upon the parties but upon the extraditing magistrate." *Allen v. Schultz (In re U.S.)*, 713 F.2d 105, 109 (5th Cir.1983).

### E. Ramos's Extradition Hearing

At the conclusion of the extradition hearing, after taking into consideration all of the evidence and arguments presented from both parties, the undersigned makes the following determinations:

### 1. Personal and Subject Matter Jurisdiction

At the extradition hearing, Ramos stipulated that the United States District Court for the Western District of Texas, Waco division, has jurisdiction over the instant extradition proceeding. The controlling statute for extradition proceedings expressly authorizes federal magistrate judges to hear and decide extradition cases if "authorized to do so by a court of the United States." 18 U.S.C. § 3184. The local rules for the United States District Court for the Western of Texas authorize a magistrate judge to issue a warrant for the arrest of a fugitive and conduct any proceedings under the provisions of 18 U.S.C. § 3184. W.D. Tex. Local Rules, Appendix C Rule 1(a)(3). Ramos's residence is within the Western District of Texas and he was arrested in the North-

ern District of Texas pursuant to an arrest warrant issued by the undersigned. The Northern District magistrate judge properly transferred the record of the initial appearance to the Western District Court pursuant to Rule 40 of the Federal Rules of Criminal Procedure. Government Exhibit 3.

## 2. Treaty in Force

The matter of the extradition of Ramos is properly before this Court pursuant to the Extradition Treaty between the United States of America and the United Mexican States dated May 4, 1978. The Extradition Treaty between the United States of America and the United Mexican States became effective on January 25, 1980, with the exchange of ratifications of the treaty between the two nations. 31 U.S.T. 5059 TIAS 9656 (enacted by the United States and Mexico "desiring to cooperate more closely in the fight against crime, and, to this end, to mutually render better assistance in matters of jurisdiction"). The Secretary of State, Collin Powell, certified that a treaty between the United States and Mexico is in full force and effect on November 19, 2002. A copy of the extradition treaty is attached to the declaration submitted by the United States and referenced by Mexico in its request for extradition. Government Exhibit 2. Ramos does not contest that an extradition treaty between Mexico and the United States is in full force and effect.

## 3. Identity of Fugitive

Ramos waived his right to an identity hearing before the United States Magistrate Judge for the Northern District of Texas, Abilene Division, on September 19, 2002. Government Exhibit 3. During the extradition hearing held before the undersigned on February 18, 2003, Ramos, through his counsel, stipulated that he is the person charged with the alleged crime in Mexico. As such, the undersigned finds that the Respondent is the Carlos Mario Ramos Herrera a.k.a. Carlos Ramos named in the extradition request and the supporting documents authenticated by the government of Mexico.

## 4. Verifiable Charges

The Mexican government has proffered documents pursuant to a judicial order for criminal action against Ramos dated January 20, 1992. *Id.* A judicial order pronouncing the issuance of a new arrest warrant for Ramos as the probable perpetrator of homicide is certified. Mexico also certified the legal provisions applicable to Ramos's charge and transcripts of judicial action taken pursuant to the charge. Ramos does not challenge these certified documents verifying the charges pending against him in Mexico. The fact that Ramos challenged the charges though an *amparo* proceeding in Mexico is yet another way the charges are verified. *Id.* at tab 16. The totality of the documents support the undersigned's finding that verifiable charges exist against Ramos.

## 5. Extraditable Crime

The treaty in effect between the United States and Mexico states, "[E]xtradition shall take place, subject to this treaty, for wilful (sic) acts which fall within any of the clauses of the appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year." 31 U.S.T. 5059 TIAS 9656 Art. 2 § 1 (1978). The first crime listed in the appendix to the treaty is murder or manslaughter. Ramos is charged with simple homicide in Mexico pursuant to the Chihuahua Penal Code Article 192. Government Exhibit 2 at Tab 17. ("The crime of homicide is committed by whomever takes another's life."). Black's Law dictionary defines murder as "[t]he killing of a

human being with malice aforethought" and manslaughter as "[t]he unlawful killing of a human being without malice aforethought". Garner, 7th Ed. Ramos does not argue that the crime he is charged with in Mexico is not an extraditable offense. The undersigned finds that the crime of simple homicide is an extraditable offense as contemplated by the treaty.

### 6. Dual Criminality

■ Dual criminality of the offense charged is a fundamental requirement of international extradition even lacking a treaty prerequisite. "The principal of dual criminality dictates that a fugitive may be extradited only if the acts constituting the offense are criminal in both the jurisdiction in which the fugitive is found and the jurisdiction to which the fugitive's extradition is sought." *In Matter of Extradition of Lahoria,* 932 F.Supp. 802, (N.D.Tex. 1996); *see also Wright v. Henkel,* 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903). The treaty between the United States and Mexico reinforces the requirement of dual criminality. 31 U.S.T. 5059 TIAS 9656 Art. 2 § 3 (1978).

■ Beyond the finding that Ramos's alleged crime is an extraditable offense pursuant to the treaty, the facts alleged in exhibits and at the hearing make it clear that the crime for which he is accused also constitutes an equivalent crime in the United States. Although eyewitnesses to the crime were not able to testify at the hearing, sworn statements from two eyewitnesses are proffered by the Mexican government. The following summarizes their statement: On the night of December 29, 1991 around 3 a.m. a fight broke out at a "coming out" party at Colonia Pueblito in the town of Aldama, Chihuahua, Mexico. The fight took place between two women and a man in which the women were beating on the man. Ramos, a municipal police officer, was appointed by the mayor of Aldama to work as security for the party. After the fight dispersed, Ramos approached a group of at least five young people and asked "who is the brave one who was fighting". One witness testified that Ramos was drunk at the point when he approached the group. The group told Ramos that the fighters had dispersed. At that time, Ramos said "but you are still here" and pulled his revolver out and pointed into the stomach of Javier Chavarria Gilberto Pando and shot him. The bullet went through Javier's body, ricocheted and hit Fernando Torres Ortega in the thigh. Both victims were taken to the hospital, where Javier was treated for his wounds and Fernando bled to death. Government Exhibit 2, Tab 11, sworn statement of Oscar Lares Nieto, Tab 12 sworn statement of Antonio Lares Nieto.

The undersigned finds that the crime for which Ramos is charged is recognized in the United States through 18 U.S.C. § 1111(a):

Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

■ Although the United States and Mexican statutes may not use the same words, the undersigned finds that they are substantially analogous. Dual criminality "does not require that the ... scope of [criminal] liability be coextensive, or in

other respects, the same in two countries. It is enough if the particular act charged is criminal in both jurisdictions." *Collins v. Loisel*, 259 U.S. 309, 312, 42 S.Ct. 469, 66 L.Ed. 956 (1922). Additionally, the Respondent has stipulated that the alleged crime is subject to dual criminality.

### 7. Probable Cause

 The purpose of an extradition hearing is not to determine the guilt or innocence of the fugitive being sought by the requesting country. All that the requesting country must show is probable cause that the fugitive committed the crime alleged. Probable cause is proven by "the existence of a reasonable ground to believe the accused guilty of the crime charged" and the requesting country's presentation of "competent evidence of a criminal violation is sufficient" to justify the fugitive's detainment for trial by the requesting country. *Garcia–Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir.1971) *cert. denied* 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972).

Mexico proffered evidence including the sworn testimony of the two eye-witnesses to the alleged crime. The statements provided by Oscar Lares Nieto and Antonio Lares Nieto indicate that they saw Ramos draw a pistol, place it on Javier Chavarria Torres' stomach, and fire the pistol wounding Torres and Fernando Torres Ortega. An additional witness, Luis Conrado Lares, submitted a sworn statement stating he was in the room when his father accepted a phone call from Ramos, who was at the hospital the morning of the murders and said he shot a person. Government Exhibit 2, Tab 10. Medical records were also proffered showing that Fernando Torres Ortega was fatally wounded by a gunshot.

At the February 18, 2003 extradition hearing, Ramos testified on his own behalf. The essence of Ramos' testimony on the issue of probable cause was directed at creating a defense to the shooting of Torres and Ortega. Specifically, Ramos testified that he had been deputized by the Mayor and attempted to quell a disturbance by shooting his gun into the air. He claims to have been pushed from behind and subsequently stumbled as the gun was discharged. Ramos further claims that he did not have any intent to shoot either Torres or Ortega.

 The Court notes that an extradition hearing is not a trial and to allow it to become one "would defeat the whole object of extradition." *Glucksman v. Henkel*, 221 U.S. 508, 512, 31 S.Ct. 704, 55 L.Ed. 830 (1911). In extradition hearings, the Court only decides probably cause and the Respondent may only offer evidence rebutting probable cause. *Jimenez v. Aristeguieta*, 311 F.2d 547, 556 (5th Cir. 1962). Extradition judges are not expected to decide conflicting factual claims between the Government and the accused. The accused may introduce evidence which explains or negates the existence of probable cause, but evidence solely related to a defense is properly excluded. *Collins v. Loisel*, 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed. 956 (1922). "Matters of defense are not appropriate or relevant because the function of the hearing judge is to determine only whether there is competent evidence to justify holding the accused for trial, not whether the evidence is sufficient to sustain a conviction." *In Matter of the Extradition of Serapio Diaz Medina*, 210 F.Supp.2d 813, 818 (N.D.Tex.2002).

Based on the Mexican government's proffered evidence, the undersigned finds that there is a "reasonable ground to believe the accused guilty of the crime charged." *Garcia–Guillern*, 450 F.2d at 1192; *Lizama v. U.S. Parole Commission*, 245 F.3d 503 (5th Cir.2001) *cert. denied* 534 U.S. 904, 122 S.Ct. 236, 151 L.Ed.2d

170 (2001) (court affirmed the deference that the Parole Commission gave to the Mexican court's conclusions in rejection of the petitioner's version of the crime). Additionally, the Court finds that through his testimony at the extradition hearing, the Respondent did not rebut probable cause, but instead tried to introduce evidence of an affirmative defense. As such, the testimony of Respondent, to the extent that it does not explain or contradict probable cause to believe he committed the crime for which he is charged in Mexico, is not considered relevant for purposes of the extradition hearing held on February 18, 2003. *See Glucksman,* 221 U.S. at 512, 31 S.Ct. 704.

### 8. Treaty Defenses

In preliminary proceedings and at the hearing, Ramos raised a limitations defense to his requested extradition by Mexico. Plea of Limitations, Hearing Transcript 12–16–02, Hearing Transcript 02–18–03. Article Seven of the Treaty states "Extradition shall not be granted when the prosecution or enforcement of the penalty for the offense for which the extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested state." 31 U.S.T. 5059 TIAS 9656 (1978).

Mexico, the requesting state, included the applicable statute of limitations provisions provided by the Chihuahua Penal Code in the certified request for Ramos's extradition. Government Exhibit 2 at Tab 17. Article 96 of the Chihuahua Penal Code states, "The criminal action shall proscribe in a term which is equal to the arithmetical mean of the minimum and maximum imprisonment penalty, which corresponds to the crime." *Id.* Article 193 proscribes that "[a]n imprisonment penalty from eight to twenty years shall be imposed upon the perpetrator of simple homicide." *Id.* These statutes calculate the statute of limitations for simple homicide in Chihuahua, Mexico at 14 years. The alleged crimes committed by Ramos occurred on December 29, 1991, setting the expiration of the limitations on December 29, 2005. *Id.* at Tab 16. Article 92 of the Chihuahua Penal Code states that the statute of limitations for a criminal action "shall be continuous and shall begin to run" "(i) From the moment in which the crime was perpetrated if the crime was instantaneous ..." *Id.* at Tab 17. Article 93 states, "statute of limitations ... shall start running the day after the accused has fled the administration of justice ..." *Id.* The judicial order issuing the arrest warrant on June 5, 2002 declared that the statute of limitations at the time of the offense is controlling law in Mexico. *Id.* at Tab 16. Ramos presents no evidence to the contrary. Ramos was apprehended on September 18, 2002 pursuant to an arrest warrant issued by the undersigned upon the request of the Mexican government and the Secretary of State of the United States. Government Exhibit 3. Ramos's arrest for the alleged crime occurred well within the applicable Mexican statute of limitations.

Ramos's defense of limitations is predicated on the argument that the statute of limitations applicable in Mexico is not as represented by the Mexican government. Plea of Limitations and Hearing Transcript, 12–16–02. In absence of any evidence presented to contradict the applicability of the Mexican statute of limitations in effect at the time of the offense, the undersigned finds that the limitations period has not run in the requesting state. Even if the limitations period had expired in Mexico, Ramos's argument may not be enough to prevent his extradition on that basis alone.

"The object of Article 7 of the Treaty is to preclude extradition of a person whose prosecution in the United States

would offend our national statute of limitations if he had committed his criminal conduct here." *Clarey v. Gregg,* 138 F.3d 764 (9th Cir.1998) *cert. denied,* 525 U.S. 853, 119 S.Ct. 131, 142 L.Ed.2d 106 (1998) (interpreting the statute of limitations requirement of the Treaty pursuant to a habeas corpus petition from a Mexican defendant certified for extradition on a Mexican simple homicide charge).

As the treaty requires that the crime not be barred by either the requesting or requested state, the statute of limitations for Ramos's alleged crime must not have expired under United States law. 31 U.S.T. 5059 TIAS 9656 at Art. 7 (1978); *Garcia–Guillern,* 450 F.2d 1189, 1192 (5th Cir.1971) *cert. denied* 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972) (treaty is an agreement between two nations and statutes of limitations of various states of United States should not be used to interfere with obligations under treaty; federal statute of limitations should apply).

In the present case, the Government argues that the most analogous crime is felony murder under section (a) of 18 U.S.C. 1111, which has no statute of limitations. Respondent argues that the Mexico charge of simple homicide is most analogous to the United States Crime of manslaughter or second degree murder, which has a five year statute of limitations because it is a non-capital offense. Specifically, Ramos argues that he was not charged under Article 210 of the Penal Code of the State of Chihuahua, Mexico which provides that homicide is aggravated when "committed with premeditation..." Ramos points out that he was charged under Article 192 with "homicidio" which is committed whenever one takes another's life. Having reviewed the Government's evidence and the applicable law, the Court finds that Ramos's alleged crime would be most analogous to the United States crime of murder in the second degree, a non-capital offense. *See* 18 U.S.C. § 1111(a).

■■■ The United States Code prescribes a five year statute of limitations to all non-capital offenses. 18 U.S.C. § 3282. Five years after the date of the commission of the crime would set December 29, 1996, as the limitations date under United States law. Ramos argues that the statute of limitations for the alleged crime, if committed in the United States, would be barred by the five year limitations period. Plea of Limitations, Hearing Transcript 02–18–03. Even so, the Code also provides that the statute of limitations will be tolled in all cased were the alleged defendant is considered to have been "fleeing from justice". 18 U.S.C. § 3290. "In order to constitute a fleeing from justice ... it is sufficient that there is a flight with the intention of avoiding being prosecuted." *Streep v. U.S.,* 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365 (1895) (predecessor statute to 18 U.S.C. § 3290), *Donnell v. U.S.,* 229 F.2d 560, 565 (5th Cir.1956) (requiring that there be an intent to avoid prosecution to be considered "fleeing from justice").

■■■ The evidence proffered by the Mexican government through sworn depositions and at the hearing indicate that Ramos fled the jurisdiction of the Mexican government immediately following the crime he is alleged to have committed. Government Exhibit 2, Hearing Transcript 02–18–03. More importantly, Ramos testified at the hearing that he fled Mexico approximately five days after the incident. He testified that he discussed whether to flee with at least two persons, an attorney and the victim's father. He also testified that he fled Mexico to avoid prosecution and believed that if he stayed out of Mexico for at least ten years, the statute of limitations would expire. He further testified that since fleeing Mexico, he has not returned. Based upon the above, the un-

dersigned finds that Ramos intentionally avoided prosecution by concealing himself and fleeing from the Mexican government in order to avoid prosecution. The Court further finds that Respondent, Carlos Mario Ramos Herrera, was a fugitive from justice from January 6, 1992, until September 18, 2002, pursuant to 18 U.S.C. section 3290. *See B.M. Donnell v. United States,* 229 F.2d 560 (5th Cir.1956); *Ross v. United States Marshal for the Eastern District of Oklahoma,* 168 F.3d 1190 (10th Cir. 1999). Since the statute of limitations has been tolled for all but five days following the incident, the Court also finds that the limitations period for the alleged crime has not expired and the treaty defense of statute of limitations does not bar the extradition of Ramos.

## CONCLUSION

**Pursuant to 18 U.S.C. § 3184** and the Extradition Treaty between the United States of America and the United Mexican States, May 4, 1978, 31 U.S.T. 5059, TIAS 9656, the undersigned finds that there has been presented sufficient evidence to render a finding of probable cause to extradite Carlos Mario Ramos Herrera, a.k.a. Carlos Ramos, to Mexico.

**Accordingly, it is hereby adjudged, decreed, and ordered as follows:**

**This matter is hereby certified to the Secretary of State of the United States of America. This Certificate of Extraditability and Order of Commitment, together with all formal extradition documents received into evidence, together with a certified copy of all testimony and evidence taken at the hearings and all memoranda of law filed on the issue of extradition, and all orders of court, shall hereby be forwarded to the Secretary of State by the United States Attorney for the Western District of Texas, Waco Division, so that a warrant may issue upon the requisition of the proper**

authorities of the United Mexican States for the surrender of Carlos Mario Ramos Herrera, a.k.a., Carlos Ramos, according to the provisions of the Extradition Treaty between the United States of America and the United Mexican States, dated May 4, 1978, 31 U.S.T. 5059, TIAS 9656.

**Defendant Carlos Mario Ramos Herrera, a.k.a. Carlos Ramos, be and the same hereby is committed to the custody of the U.S. Marshal's Service of the United States of America pending his surrender to the United Mexican States, or until further order of court.**