

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-2008

# USA v. Martin

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4494

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Martin" (2008). *2008 Decisions.* Paper 1131.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1131

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4494
_____

UNITED STATES OF AMERICA,

Appellee

v.

SYLVESTER MARTIN,

Appellant

_____

On Appeal from United States District Court
for the Middle District of Pennsylvania
D. C. No. 03-cr-00360
District Judge: Honorable Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
May 6, 2008

Before: SCIRICA, *Chief Judge*, BARRY and HARDIMAN, *Circuit Judges*.

(Filed: May 28, 2008)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Sylvester Martin appeals after a jury convicted him of violating 18 U.S.C. §§ 922(g) and 924(e) and the District Court sentenced him to 276 months imprisonment. We will affirm.

**I.**

Because we write for the parties, we recount only those facts essential to our decision.

In August 1998, police arrested Martin for public drunkenness after they responded to a call of shots fired in his neighborhood in Harrisburg, Pennsylvania. During a search of Martin's home, police recovered a loaded 9 millimeter pistol that ballistics testing confirmed was the source of three spent 9 millimeter shell casings found on Martin's porch. Martin was charged with reckless endangerment, giving a false report to law enforcement authorities, disorderly conduct, and discharging a firearm within city limits.

Martin was released on bail, but a warrant for his arrest was issued after he failed to appear for his March 1999 arraignment. Martin remained at large until October 2000, when he was arrested in Virginia. Before extradition could be arranged, however, Virginia authorities released Martin on bail and dropped the charges against him. Martin disappeared again until October 2002, when he was arrested in Virginia a second time. In January 2003, Martin was extradited to Pennsylvania.

In November 2003, Martin's case was referred to the United States Attorney's Office and a grand jury returned a one-count indictment. Martin's counsel moved to dismiss the indictment, arguing that it was 102 days beyond the statute of limitations. The District Court denied the motion, finding that the statute was tolled during the time Martin was a fugitive in Virginia.

Before trial, Martin had been represented by five attorneys. The first four were discharged at Martin's request and he obtained ten trial continuances because of his conflicts with counsel. When Martin expressed his desire to discharge the fifth attorney on the eve of trial, the District Court refused to grant him another continuance. Accordingly, Martin opted to represent himself, and made a knowing and voluntary waiver of his right to counsel. The District Court directed Martin's fifth attorney to serve as stand-by counsel, again with Martin's assent.

## II.

Martin first argues that he was immune from prosecution because the five-year statute of limitations of 18 U.S.C. § 3282(a) had run. But federal law provides: "No statute of limitations shall extend to any person fleeing from justice." 18 U.S.C. § 3290. Martin argues that § 3290 does not apply to him because he was a fugitive from state charges and was not charged federally until December 2003, almost four months after the statute of limitations had run.

Martin's argument, though creative, is unpersuasive.  A defendant may be a "person fleeing from justice" under § 3290 regardless of whether he has been indicted. As the Supreme Court explained:

> In order to constitute a fleeing from justice, it is not necessary that the course of justice should have been put in operation by the presentment of an indictment by a grand jury, or by the filing of an information by the attorney for the government, or by the making of a complaint before a magistrate.  It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not been actually begun.

*Streep v. United States*, 160 U.S. 128, 133 (1895).  Thus, § 3290 does not presuppose the existence of *any* indictment, or the pendency of *any* charges — let alone a specific federal indictment.  This analysis is consistent with the interpretations of other courts of appeals. *See United States v. Morgan*, 922 F.2d 1495, 1497-98 (10th Cir. 1991); *see also United States v. Catino*, 735 F.2d 718, 721 (2d Cir. 1984); *United States v. Gonsalves*, 675 F.2d 1050, 1051 n.2 (9th Cir. 1982).

To determine whether Martin was a "person fleeing from justice" under § 3290, we consider the sufficiency of the evidence supporting the District Court's factual determination that he intended to remain in Virginia to avoid being brought to justice on the Pennsylvania charges for at least 102 days.  Martin does not dispute that he was outside the jurisdiction from March 1999 until his arrest in 2003.  In addition, the District Court determined that Martin had actual notice of the scheduled arraignment that he skipped in March 1999.   Martin also knew about the Pennsylvania charges because he filed a notice to waive extradition after he was arrested in Virginia in October 2000.

4

Finally, Martin did not return to Pennsylvania until he was formally extradited. As Martin has made no effort to rebut these factual findings, and because our review of the record confirms that a preponderance of the evidence supports them, we conclude that the District Court did not err in denying Martin's motion to dismiss the indictment.

### III.

Martin next argues that the District Court violated his Sixth Amendment right to counsel by "forcing" him to represent himself on the eve of trial.

The Sixth Amendment provides: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment not only guarantees the right to counsel; it also guarantees the converse right to proceed without counsel at trial because "the Constitution does not force a lawyer upon a defendant." *Faretta v. California*, 422 U.S. 806, 814-15 (1975) (citation omitted). The Sixth Amendment thus embodies two competing rights because exercising the right to self-representation necessarily means waiving the right to counsel. *See Buhl v. Cooksey*, 233 F.3d 783, 789 (3d Cir. 2000). A waiver is "an intentional relinquishment or abandonment of a known right" and must be the product of a free and meaningful choice. *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Before finding a waiver, we "must be confident the defendant is not forced to make a choice between incompetent counsel or appearing pro se." *Pazden v. Maurer*, 424 F.3d 303, 313 (3d Cir. 2005) (citation and internal quotation marks omitted).

5

In the case at bar, Martin had been assigned *five* attorneys before trial. Martin's first attorney, James J. West, the former United States Attorney for the Middle District of Pennsylvania, represented him from December 2003 to January 2004, when Martin moved to have new counsel appointed. His second attorney, Gregory B. Abeln, was appointed to represent Martin, and did so from January to May 2004; Martin filed a *pro se* motion seeking Abeln's replacement on the ground of "ineffectiveness," and the District Court granted Abeln's motion to withdraw. Within two months of the appointment of his third attorney, L. Rex Bickley, Martin expressed dissatisfaction with Bickley and requested new counsel. Before the next hearing in August 2004, however, Martin — who had been free on pretrial release — fled back to Virginia. This derailed the trial until Martin was arrested on other charges in Virginia and brought back to Pennsylvania in May 2005. At that time, Martin refused to meet with Bickley and formally moved to have him discharged. The District Court granted this motion and appointed Martin's fourth attorney, Timothy J. O'Connell, who remained on the case until October 2005, when he was granted permission to withdraw so that Martin could obtain private counsel. Martin wished to hire Royce L. Morris and when he could not afford to do so, the District Court appointed Morris to represent him beginning in January 2006, even though Morris was not approved under the Criminal Justice Act. One or more continuances resulted from each of these events.[1]

---

[1] Before sentencing, the District Court appointed Martin's sixth attorney, Kyle W. Rude, who withdrew because of Martin's dissatisfaction with his refusal to file certain

On the eve of trial, Martin expressed his desire to fire Morris and proceed *pro se,* complaining that Morris was not filing the motions that Martin had wanted him to file, and claimed that Morris' failure to do what Martin asked of him violated his "right to representation."  Before permitting Martin to proceed *pro se,* the District Court questioned Morris and established that he was ready, willing, and able to go to trial as scheduled the following Monday, and stated that he saw no reason for a continuance. Martin then complained that if permitted to represent himself, he would need another continuance because Morris had "sucked up every damn time I have left" and because he could not use the prison library.  The District Court reiterated that trial would begin as scheduled, with Morris either representing Martin, or acting as standby counsel. Although Martin insists that he represented himself "unwillingly," he does not contend that his waiver of his right to counsel was involuntary, and he ultimately did consent, stating: "I'm going to represent myself, and I'm going to have [Morris] for a standby lawyer."  The record shows that the District Court then engaged in a plea waiver colloquy with Martin, and that his decision to waive counsel and represent himself (with his fifth attorney present as stand-by counsel) was voluntary.

In these circumstances, we hold that the District Court's grant of Martin's request to proceed *pro se* did not violate the Sixth Amendment.  This case is distinguishable from *Pazden*, where we found that a court's denial of a continuance forced the defendant to

---

motions that he deemed frivolous.

7

either proceed to trial with an attorney "who admitted being unprepared and unfamiliar with the record," or proceed *pro se* on a complicated 133 count indictment. *See Pazden*, 424 F.3d at 314. Given the comprehensiveness of the District Court's waiver colloquy, we conclude that Martin voluntarily waived his right to counsel.[2]

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[2] Indeed, in light of Martin's obstreperous conduct throughout the proceeding, even if there were no waiver, his conduct suggests that he *forfeited* the right to counsel. Martin's own attorney observed that his inability to get along with his attorneys appeared to be part of an overarching strategy of perpetual delay. The record shows that Martin favored firing Morris — until the court told him that, even if he did so, he would not get another continuance. We have noted that a defendant can forfeit his Sixth Amendment right to counsel by "engag[ing] in extremely serious misconduct." *United States v. Leggett*, 162 F.3d 237, 250 (3d Cir. 1998) (citation and internal quotation marks omitted). As the Supreme Court has noted, "the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." *See Taylor v. United States*, 414 U.S. 17, 20 (1973) (citation and internal quotation marks omitted).